# McAllister Exhibit A

1

REALITY★CHECK

# Do Penn State's bylaws restrict trustees' freedom of speech? What experts said

By **Halie Kines**

November 24, 2025 1:23 PM Gift Article



An aerial view of Old Main and the Penn State campus on Wednesday, Sept. 3, 2025. Abby Drey *adrey@centredaily.com*

## Key Takeaways

AI-generated summary reviewed by our newsroom.

**Listen to this article**

The Penn State trustees' recently updated bylaws that limit board members' press interactions raise serious First Amendment concerns, according to four experts the Centre Daily Times talked with.

The board approved an update to its bylaws earlier this month that included requiring trustees to "coordinate all media and press interactions relating to matters that have come before the Board with the Board Office in advance and shall respect guidance regarding such interactions that might be conveyed by that Office or the Office of Strategic Communications." It updates a rule put in place last year that said trustees had to coordinate media interviews and press statements with the board office, who then could work with strategic communications.

TOP VIDEOS




The further limits on how trustees interact with the media raised eyebrows among First Amendment experts, who said the new bylaws raise "serious constitutional concerns" and potentially restrict the trustees' speech.

Melissa Bevan Melewsky, media law counsel for the Pennsylvania NewsMedia Association, of which the Centre Daily Times is a member, said in this situation, Penn State is a government actor and any government restriction on speech raises a red flag from a constitutional perspective.

"Board members are not university employees, and they have a constitutional right to speak about matters of public concern. Moreover, their constituents, the press and the broader community have a right to receive information without undue government interference," she said in an email. "The policy restricts the free flow of information, and it could chill protected speech about matters of public concern, both of which create potential liability for the university and work against the public interest."

David Cuillier, director of the Freedom of Information Project for the Brechner Center for the Advancement of the First Amendment at the University of Florida, said it's one thing for the board to recommend that trustees be clear that they are speaking for themselves and not on behalf of the board. But saying they "shall" get clearance from the university's public relations team is another thing, he said.

Amy Kristin Sanders, the John and Ann Curley Chair in First Amendment Studies at Penn State, said these changes are a variation of what is called a "one board rule." It has come up more recently among government entities that Sanders thinks are trying to control what board members or government employees say.

The board of trustees is made up of 36 voting members and two ex-officio non-voting members, the university president and the governor of Pennsylvania. Nine of them are elected by Penn State alumni. A real challenge in this specific case, Sanders said, is that the elected members have an obligation to speak for the constituencies who elected them.

"This idea that a board member should have to clear all media appearances, should have to run any statements by some kind of official entity overseeing the board is problematic because it inhibits their ability to essentially speak any kind of dissenting viewpoint to the constituencies who elected them," Sanders said.

Anthony Lubrano, an alumni-elected trustee, was the sole vote of opposition against the bylaw changes. During the Nov. 7 meeting, he said the changes don't align with best practice, especially limiting the trustees' speech "more than it already has been limited." He previously voted against bylaw changes in 2024 that gave existing board members more say over who can be on the ballot for alumni-elected seats.

## When can Penn State trustees express their viewpoints?

The bylaws state that while debate of the trustees views is "fully embraced" during board meetings, outside communication of a board member's views can be misconstrued to be an expression of the entire board's position. Therefore, trustees should make "diligent efforts to avoid such misunderstandings."

Tabitha Oman, vice president and general counsel at Penn State, said the line was added so the bylaws clearly state trustees are encouraged to debate their views during a board meeting.

She emphasized that there are no limitations on debating views during a board meeting based on if members of the public or press are present.

Cuillier applauded them for fostering free discussion but said that still doesn't mean they can restrict what a trustee says outside of a meeting.

"Everyone in this country — including trustees — have a right to express their viewpoints to their family, neighbors, reporters, and the press. Muzzles are for dogs, not people," he said in an email to the CDT.

The board of trustees meets in public routinely throughout the year to discuss and take action on university business, like high-profile hires, approving large projects on campus, setting the tuition rates and reviewing and approving the budget. But the board's past practices point to a lack of transparency and openness with the public, and it has even been sued for alleged violations of the state's Sunshine Act.

"It's a bit ironic actually, that they included the line about speaking your opinions in meetings, given the board's history of having essentially closed-door meetings or executive sessions, as they call them, and then coming into public meetings and simply voting through the agenda," Sanders said. "That suggests to me that they really want no discussion, no input, no commentary, to take place during the public versions of the meetings. That's been sort of their history and reputation. This new bylaw update really just seems to be an extension of that allergy to transparency that they're known for."

There is a notable trend toward government secrecy across all levels of government in the United States right now, she said, and these bylaw changes could be part of that trend. Penn State has been leading that trend toward secrecy for decades, Sanders said.

But ultimately, she thinks the desire to silence dissent and keep embarrassing topics from coming up in public is likely the driving force behind the change in bylaws. The university is facing many lawsuits currently, she said, and there's been a lot of controversy related to former trustee Barry Fenchak's removal from the board and his push for transparency.

## Would the bylaws hold up if legally challenged?

Fenchak previously filed a lawsuit against the university that alleged the trustees adopted unconstitutional bylaws to silence dissent and unfairly targeted him for his critical questions. Centre County Judge Brian Marshall found the governing rules represent a "right to self-governance." In August he dismissed Fenchak's lawsuit with prejudice, meaning it cannot be refiled.

Fenchak and his attorneys took particular issue with the requirement that trustees support majority board decisions, characterizing it as a "draconian gag order." Marshall said that section of the board's bylaws is "undoubtedly a restriction on the speech of Trustees." And while the restriction is seemingly inconsistent with the state constitution's broad guarantee of free speech, Marshall said the right is not absolute.

Sanders and Cuillier still see potential for a successful First Amendment challenge to the bylaws, with Cuillier pointing to Allegheny County, which was sued in 2023 for a gag policy on its employees. The county ended up settling, likely in anticipation of losing, he said.

Sanders said the bylaws can be viewed two ways. It can be viewed as a prior restraint, or an unlawful governmental effort to silence someone's speech before they speak. That alone will have a "very serious chilling effect" on what the trustees will feel comfortable speaking about, she said.

But what remains to be seen is whether this could be considered a content-based restriction on speech.

"It will be interesting to see this play out, and to see … what happens to any trustees who do choose to speak without getting approval, or how it's enforced against trustees, and whether they single out certain trustees who tend to be more vocal and sort of chastise them for their speech, as opposed to chastising other trustees who may be more vocal, but who sort of told the party line about Penn State," Sanders said. "Either one of those situations could cause Penn State some legal headaches under the First Amendment."

## News Alerts

Be among the first to know when there's major local or national news

pknudsen@rcfp.org

SIGN UP

By submitting, I agree to the Privacy Policy and Terms of Service.

**Want to see more content like this?**

## Related Stories from Centre Daily Times

PENN STATE

**Penn State trustees approve bylaw changes that further limit media interactions**

November 6, 2025 6:51 PM



**Halie Kines** *Centre Daily Times*

Halie Kines is a former journalist for the Centre Daily Times.

## Join the Conversation

FOLLOW SIGN OUT

Your comments will appear under the nickname **User ad637af**. If you'd like to update your nickname, click here.

UA

Join the conversation, User ad637af

# McAllister Exhibit B




REALITY★CHECK

# Will Penn State, Big Ten OK $2.4B deal likened to 'payday loan'? PSU, trustees mum

By **Josh Moyer**

November 13, 2025 11:02 AM Gift Article



Old Main on the Penn State University Park campus on Wednesday, May 21, 2025. Abby Drey *adrey@centredaily.com*

## Key Takeaways

AI-generated summary reviewed by our newsroom.

**Listen to this article**

Penn State is again faced with a decision that could have a wide-ranging impact on the future of the university and the Big Ten — and, once again, officials are being criticized for their lack of transparency and shared governance.

The conference is basically looking at selling 10% of its TV rights and sponsorships to an investment-minded California pension fund, which wants partial ownership for as long as the deal lasts. The proposal is reportedly for 20 years and $2.4 billion.

TOP VIDEOS




If the proposal is approved by schools in the conference, each school is expected to receive more than $100 million in a lump sum. The obvious trade-off is that more money at this moment almost certainly means less money later, a dynamic that caused one Michigan regent to liken the deal to a "payday loan." (Another said it was like opening a new credit card to pay off debt.)

National officials are starting to sound the alarm on the deal, concerned both for the potential consequences of introducing private capital into higher education and for how university leadership across the Big Ten appears to be ignoring its governing boards.

In an open letter Monday, Michael B. Poliakoff, president of the American Council of Trustees and Alumni (ACTA), expressed concern that governing boards have "received insufficient information." He also wrote that university leadership bypassing such boards risks "undermining the legitimacy" of any future deal.

"The universities of the Big Ten have earned global respect for their commitment to integrity, excellence, and public trust," Poliakoff wrote. "That trust now rests on whether their governing boards will insist upon proper oversight in a moment of historic consequence."

The Centre Daily Times reached out Tuesday to Penn State's full board of trustees, three university spokespeople and board chair David Kleppinger. But it received no responses. Questions ranged from whether this will be decided by the board, whether conversations have already taken place and how they feel about private capital at Penn State.

---

The chair of the university's faculty senate, which is not directly involved in such decision-making, deferred comment to academic trustee Nicholas Rowland — who also did not respond to a message.

The university's board of trustees formally approved new bylaws a week ago that further limit its interactions with the media.

Michelle Rodino-Colocino, president of the Penn State chapter of the American Association of University Professors, was unfamiliar with the issue until reading Poliakoff's letter. After learning more about it, Rodino-Colocino said she was "outraged" faculty weren't brought to the table sooner — and she questioned how private capital could possibly benefit the university in the long run.

"The Penn State experience is not up for sale," she added. "If we sell to private equity firms, it's going to tank."

Again, these issues aren't limited to just Penn State. Several unnamed trustees at multiple Big Ten schools told Front Office Sports they were not given details of the

proposal. (One board member told Front Office Sports the process was “ass-backwards.”)

Typically, such boards are designed to oversee and protect the long-term interests and assets of their schools. But, according to Yahoo! Sports’ Ross Dellenger, at least some chancellors and presidents have informed their respective boards this is not a voting issue for them and any presentations are “informational only.”






Regardless, the respective boards of USC and Michigan have still publicly opposed the deal. Because the current offer requires unanimity, Dellenger reported Sunday that the Big Ten *might* ultimately choose to move forward without the Trojans and Wolverines in the deal, although it’s not clear what that might mean for the conference’s distant feature — specifically beyond 2036, the end of the existing grant-of-rights agreement.

“The Big Ten doesn’t need to be sold to save college sports,” Michigan regent Jordan Acker said during a public meeting last month. “It needs to lead to save college sports.”

A Big Ten vote on the matter — involving the presidents and chancellors — is reportedly scheduled around Nov. 21, although nothing has been publicly confirmed. Penn State trustees have not discussed the matter publicly, and the next trustees meeting is slated for Feb. 19-20.

*CDT’s Halie Kines contributed to this report*

**Want to see more content like this?**


## News Alerts

Be among the first to know when there's major local or national news

pknudsen@rcfp.org

SIGN UP

By submitting, I agree to the Privacy Policy and Terms of Service.

# McAllister Exhibit C

**WELCOME OFFER** **$9.99 for 1 month** Unlimited local reporting when you need it. **SUBSCRIBE NOW**

PENN STATE

# Penn State trustees approve bylaw changes that further limit media interactions

By **Halie Kines**

Updated November 7, 2025 4:44 PM Gift Article



The bell tower of Old Main on Penn State's campus *Georgianna Sutherland / For Spotlight PA*






**Listen to this article**

The Penn State trustees approved revisions to their bylaws, including eliminating the option for write-in trustee candidates and further limiting trustees from speaking to the press.

The governance committee approved the changes Thursday and the full board voted on the matter during its meeting on Friday.

A change to the bylaws states trustees "shall coordinate all media and press interactions relating to matters that have come before the Board with the Board Office in advance and shall respect guidance regarding such interactions that might be conveyed by that Office or the Office of Strategic Communications." The bylaws previously said trustees had to coordinate media interviews and press statements with the board office, who then could work with strategic communications. That rule came when the bylaws were last updated roughly a year ago.

Another sentence of the bylaws states trustees "shall be cognizant of their special roles and fiduciary responsibilities" in interactions with students, faculty, staff, and university-affiliated groups. A proposed change adds "press and media" to that list.

During the full board meeting on Friday, Trustee Anthony Lubrano was the only vote in opposition to the changes.

"I don't think what we're suggesting here is best practices, particularly around the notion that our speech be limited any more than it already has been limited," Lubrano said. "I voted no previously to the changes we made and I stand in continued support of that position."

Thursday was the first time trustees publicly reviewed the proposed changes, and there was little discussion among committee members. The committee has had at least two executive sessions about the bylaw changes.

Tabitha Oman, vice president and general counsel sat Penn State, said a line was also added so the bylaws clearly state trustees are encouraged to debate their views during a board meeting.

"A public meeting is a very appropriate place for vigorous debate, no limitations based on what members of the public or press are present," she said.

Although they're encouraged to debate during meetings, the bylaws state "external communication of an individual Trustee's views can be misconstrued to be an expression of the Board's position as a whole and Trustees should make diligent efforts to avoid such misunderstandings."

## Changes to board elections

Revisions to the elections appendix to the bylaws includes adding a section that states candidates who did not complete the requirements determined by the board office are ineligible to be nominated or elected. Therefore, write-in candidates are not allowed.

A revision would add a review of the candidate's social media and online presence as part of the background check process.

A number of changes were made to the section outlining trustees emeriti status, which states the role of a trustee emeriti will be an honorary title for any board member who served for at least nine years (a change from six years) with

distinction, Oman said. Moving forward, that role will no longer involve an active role in the work or meetings of the board, she said.

The bylaws were last updated in July 2024. The controversial changes gave existing board members more say over who can be on the ballot for alumni-elected seats, created a code of conduct for trustees and more.

The bylaws have been a point of contention for some, including former trustee Barry Fenchak, who was removed from the board this past summer for code of conduct violations after a court battle.

Fenchak previously filed a lawsuit against the university that alleged the trustees adopted unconstitutional bylaws to silence dissent and unfairly targeted him for his critical questions. Centre County Judge Brian Marshall found the governing rules — which require trustees to support majority decisions and not publicly criticize the university — represent a "right to self-governance." He dismissed Fenchak's lawsuit with prejudice, meaning it cannot be refiled.

After the board said he was unqualified to appear on the ballot for reelection, Fenchak ran an unsuccessful write-in campaign.

This story was originally published November 6, 2025 at 6:51 PM.

**Want to see more content like this?**



**Halie Kines** *Centre Daily Times* 814-231-4633

Halie Kines reports on Penn State and the State College borough for the Centre Daily Times.
Support my work with a digital subscription

# McAllister Exhibit D

PENN STATE

# Penn State trustees permanently remove Barry Fenchak from the board

By **Halie Kines**

Updated June 16, 2025 5:04 PM Gift Article

Timeline of events that led to the removal of Penn State trustee Barry Fenchak

00:00 03:37

Penn State board of trustees chair David Kleppinger summarizes the timeline of events that led to the board's resolution to remove trustee Barry Fenchak. The special meeting was held on Monday, June 16, and concluded with a 30-4 vote to remove Fenchak. By Penn State livestream

**Listen to this article**

A Penn State trustee has been removed from his seat on the board, likely a first in the university's history.

The Penn State board of trustees voted 30-4 to remove Barry Fenchak, one of nine trustees elected by university alumni, from the board during a special meeting

Monday. His three-year term expires June 30 and he did not win reelection in the recent trustee election.

Learn More

TOP VIDEOS
AD




Trustees who voted against the measure were Fenchak, Anthony Lubrano, Ted Brown and Jay Paterno, who said the move sends a “chilling message to future boards.” Those who voted in favor cited Fenchak’s misconduct allegation, which trustee Kelley Lynch said he took no responsibility or remorse for.

Trustee bylaws, which were updated last July, state if a trustee is removed from the board, they will be permanently ineligible to run for election or serve again as a trustee. Removing a member requires two-thirds of the trustees present at the meeting voting in the affirmative.

The trustees previously tried to remove Fenchak from the board in September because of an incident that occurred after the board’s July 2024 meeting. Fenchak loosely repeated a quote to a woman staff member from the PG-rated movie “A League of Their Own” in which Tom Hanks’ character told a baseball umpire he

looked like a "penis with a little hat on." The board referenced the same incident during Monday's meeting as reason to remove him.

Lynch said she can likely speak for many women around her age who have had to deal with "boys will be boys" comments and actions, or worse, early in their careers. They often had no choice but to get over it, she said.

"How women felt or were treated in the workplace was rarely considered a priority. But this is now 2025, this isn't the '90s, it's not the '80s or even earlier. When someone finds the courage to file a complaint, especially against the person in a significantly more powerful position, it is our duty to take it seriously," Lynch said.






Restaurants In Gaithersburg With (
Senior Discounts


And that's what the university did, she said. A full investigation was conducted, including interviews with the employee, other workers who witnessed the incident and Fenchak.

The employee requested not to work meetings where Fenchak would be present, Lynch said, a sign of how affected she was by the incident. Fenchak's response was "textbook non-apology," she said.

"His lack of genuine remorse and unwillingness to take responsibility, along with his complete failure to recognize the power dynamic at play, is what concerns me," Lynch said. "...My issue is how he responded when confronted with the harm he caused. How can we trust that this won't happen again when he took no responsibility, showed little to no recognition or remorse for the impact of his words and actions?"

Trustees who voted against the measure said while they thought Fenchak's comment was inappropriate, they did not think it was severe enough to remove him from the board. Some also worried about the precedent it would set.

Lubrano questioned if the board was being hypocritical and intellectually dishonest by considering "the most serious sanction of all" and referenced a number of other

cases of trustees — who he did not name — allegedly violating the same standards and not facing any consequences.

He also warned the board that removing Fenchak as trustee would likely lead to costly litigation and be a distraction.




“My fellow trustees, mark my words. Your decision to remove Trustee Fenchak will come back to haunt this university,” Lubrano said.

During the meeting Fenchak echoed Lubrano’s reference to other trustees allegedly violating standards with no repercussions, going as far as saying a current trustee has repeatedly verbally and physically threatened other trustees to the point of needing to be physically restrained.

“Even when other trustees submitted written concerns to board leadership, expressing fear for their safety and requesting additional security of board functions, no action was taken,” Fenchak said.

Barry Fenchak shares his thoughts before Penn State board of trustees votes to remove him

00:00 06:11

Barry Fenchak shares his thoughts before the Penn State board of trustees voted to remove him from the board on June 16, 2025. By Penn State

He maintained that he is being retaliated against for asking for access to information, questioning things and expecting thorough deliberation of important decisions.

“That said, I expect the board leadership does feel that I pose a threat. A threat to a board culture of secretive rubber stamp governance, a threat to the culture of providing unanimous support for all leadership proposals no matter how damaging some of those proposals may be to the university. Indeed, board leadership is probably justified in holding that fear,” Fenchak said.

Paterno said Fenchak’s comments to the woman staffer were offensive and not OK. He also acknowledged Fenchak has been a target since he was elected and Monday’s vote borders on “petty” as his term expires in two weeks and a subcommittee can keep him off of the board in the future.

“Him being on this board is not going to happen in the future. We all know that. But what we want to do today is make sure he can never run again. That sends a very chilling message to future boards and future people,” he said.

A Penn State spokesperson previously told the CDT the Strategic Communications office was not aware of any previous instances of this type of action being taken against a trustee.

## Lawsuits, trustee election and more

A board subcommittee previously found the incident to be a code of conduct violation and unanimously recommended his removal. The issue went to court in October as part of a lawsuit Fenchak filed against the board, in which he said he cannot fulfill his duty as trustee because the university’s decision-makers have been unwilling to provide detailed financial information.

The judge blocked the board from removing him as trustee a day before the vote was scheduled, finding Fenchak had provided “uncontradicted evidence of a broad pattern of retaliatory behavior” by the board.

Months later, Fenchak submitted materials and garnered enough signatures to appear on the trustee election ballot to run for a second term, but the board ruled he was unqualified and ineligible to appear on the ballot — a decision a judge upheld in May. He ran an unsuccessful write-in campaign.




The board was able to remove Fenchak from his seat on the board Monday because the judge, Brian Marshall, lifted his preliminary injunction on removing him last month, after finding the basis for it had since become moot.

Marshall granted the injunction in the fall after Fenchak showed the board was trying to remove him in retaliation for his repeated requests for detailed financial information. But in the seven months since, Fenchak was given 510 pages of information related to his request. He can no longer claim he is subject to removal from the board because of those specific requests, Marshall wrote in his ruling.

Fenchak's next court appearance is scheduled for July 30.

*Reporter Bret Pallotto contributed to this report.*

# McAllister Exhibit E

BOARD OF TRUSTEES

# Centre County judge halts Penn State board of trustees from removing outspoken trustee

By **Bret Pallotto**

Updated April 11, 2025 5:37 PM Gift Article



Penn State trustee Barry Fenchak stands outside the Centre County Courthouse Annex on Tuesday, Oct. 8, 2024. *Centre Daily Times, file*

**Listen to this article**

Penn State's board of trustees may not go forward with a vote to permanently remove one of its most outspoken members, a Centre County judge wrote Wednesday in a decision that was critical of the board's "broad pattern of retaliatory behavior."

An attorney for trustee Barry Fenchak told the Centre Daily Times the ruling from Centre County Judge Brian Marshall sends a “very powerful message” to the university’s board.

TOP VIDEOS

Watch More

00:01 02:00

“I think it’s time for the board of trustees to do some deep self-reflection on what their legacy will be and what their mission is at this institution,” attorney and Penn State alumna Terry Mutchler said. “... The bottom line is they cannot hand trustees a blindfold. They’re supposed to hand them a copy of bylaws and I think that there needs to be some transparency that is injected into this.”

Penn State did not offer an immediate response. The university was reviewing the decision, spokesman Wyatt DuBois wrote in an email to the CDT.

Penn State’s board was set to vote Thursday on whether to remove Fenchak for what it said was a code of conduct violation. A board subcommittee unanimously recommended his removal last month.

After the board’s July meeting, Fenchak loosely repeated a quote from the PG-rated movie “A League of Their Own” in which Tom Hanks’ character told a baseball umpire he looked like a “penis with a little hat on.”

No Crying in Baseball | A League of Their Own (To
Scene City

Watch on

Penn State's attorneys wrote in court documents that Fenchak repeated the line to a junior female staff member who later reported feeling uncomfortable.

---

Fenchak expressed regret during his testimony Tuesday for making anyone feel uncomfortable, saying he meant it as a self-deprecating joke.

In his 12-page opinion, even Marshall wrote the comment was "thoughtlessly made" and made worse given Fenchak's position when compared to a junior staff member. But the judge also wrote that he could not ignore Fenchak's often undisputed claims of retaliation by the board.

Fenchak's remark came just three days after he filed a lawsuit against the board, and using that incident as the basis for the first-ever removal of a trustee is "suspect," Marshall wrote.

"I think a 12th-grade civics student could have figured out that this was retaliation and we're extremely glad that the judge saw it that way," Mutchler said.

Marshall also brushed off Penn State's claim that blocking the board from removing Fenchak would stop the university from holding its trustees accountable, writing that its argument was "unconvincing."

As a result of the inappropriate interaction, Fenchak is now required to attend board meetings via Zoom rather than in person and has had his social privileges as a trustee revoked.

An investment adviser by trade, Fenchak also alleged the board tried to have him removed because of his repeated requests for detailed information about the university's at least $4 billion endowment.

Rather than share the information, Marshall wrote that the board "sought an opportunity" like Fenchak's remark to the female staffer to "permanently end his probing inquires into the health of the endowment" for which he has a responsibility.

"Allowing (Fenchak's) removal would recast a shadow over the financial operations of (Penn State), to the detriment of every PSU stakeholder except those at the very top of the PSU hierarchy," Marshall wrote.

The injunction will remain in place unless it is removed by Marshall, until Fenchak's lawsuit is resolved or until his three-year term expires in 2025.

Fenchak is one of two outspoken alumni-elected trustees embroiled in legal disputes with the board.

A Lackawanna County judge ruled earlier this month that Penn State must continue to halt its internal investigation into alumni-elected trustee Anthony Lubrano until it pays his legal expenses.

The legality of the investigation — which was made public in Lubrano's lawsuit last month — is not currently at issue, although Lubrano's attorneys characterized it as "retaliation for his exercise of his First Amendment rights," a charge the university denied.

As litigation involving both trustees moves forward, Penn State will likely face renewed questions about its transparency and the way it which its board carries out its business.

"The real threat here is the fact that Penn State continues to do their work behind a curtain, and that's got to end," Mutchler said. "My great hope is, that as we move forward in the overall case, that will end here. What they were doing was obvious and it just didn't even pass the laugh test."

This story was originally published October 9, 2024 at 6:37 PM.

---

**Do you want to see more? Check out these articles!**

1. Another Penn State alumni-elected trustee files lawsuit against university, seeks legal fees
2. Centre County judge blocks Penn State board of trustees from removing outspoken trustee
3. Penn State to pay $703K to resolve allegations it paid some women less than male colleagues
4. Ex-Penn State fencer, university settle lawsuit alleging sexual harassment by longtime coach
5. Penn State to pay $1.25M to settle lawsuit brought by cybersecurity whistleblower
6. Former Penn State students may receive slice of $17M settlement over COVID restrictions
7. Judge rejects Penn State's bid to throw out a lawsuit brought by former majorette

**Want to see more content like this?**

**News Alerts**

Be among the first to know when there's major local or national news

pknudsen@rcfp.org

SIGN UP

By submitting, I agree to the Privacy Policy and Terms of Service.



**Bret Pallotto** *Centre Daily Times* 814-231-4648

# McAllister Exhibit F

CENTRE DAILY TIMES

Log In | **Subscribe**

Opinion articles provide independent perspectives on key community issues, separate from our newsroom reporting.

OPINION

# *Alice Pope: Alumni association eschewing inclusiveness*

**By Alice Pope**

April 18, 2015 1:34 AM Gift Article

**Listen to this article**

Why does the Penn State Alumni Association leadership fear democracy?

In calling our quest to run for alumni council a “power grab,” Penn State Alumni Association Executive Director Roger Williams uses a tactic from Politics 101: Create a smokescreen to distract from the real issues.

The real power grab has already occurred.

The PSAA, aided by the power bloc within the board of trustees, has created an automatic trustee seat for the past president of the PSAA, so we will now have a super-trustee, more powerful than any other individual trustee.

It is telling that Williams is quiet about the fact that the past president, while serving as a university trustee, will simultaneously continue to hold a powerful leadership position within the PSAA.

Few understand the internal workings of the PSAA, where the nominal governing body — the alumni council — is trumped by the executive board, a group dominated by members handpicked by the PSAA president, by whom most important decisions are made.

Meanwhile, the Nominating Committee, with all members chosen by the president, selects the vice president, who automatically becomes the president, and then ascends to a trustee seat. The past president is a member of the executive board and chairs the Nominating Committee, thus guaranteeing control over the choice of the next PSAA leader and, ultimately, a university trustee.

No other trustee gets to self-select his or her successor. Yet Williams is worried about “undue influence” of four trustees serving on the 86-member alumni council.

Also deeply troubling is the potential for conflict of interest with the PSAA trustee.

The independence of the PSAA is already muddied by the organization’s reliance on Penn State for more than 25 percent of its annual budget, as well as the fact that its executive director reports to Penn State administrators.

One can imagine the possibility of Penn State administration pressuring the PSAA leadership to install a sympathetic trustee on the Penn State board. This danger is magnified by the lack of any semblance of democratic process in the selection of PSAA leaders; instead, a self-perpetuating group calls the shots for the PSAA and chooses their very own trustee.

Our university deserves better governance than this, and Penn State’s alumni deserve an alumni association that serves them in a fair and inclusive manner.

Our interest in serving on the alumni council is driven by a single goal: to advocate for inclusive and transparent governance processes within the PSAA.

In response to our nominations, the PSAA has turned itself inside out, violating its own bylaws on election procedures and hurriedly moving to implement revisions to bylaws that further disenfranchise its own members.

Changes passed by the council on Friday will exclude the public – including PSAA members — from Council meetings; remove established parliamentary procedure

for council meetings in favor of giving the president full control over the way business is conducted; adding more president-nominated members to the council to bring the total membership to more than 100; removing any input on council nominations from the council itself; and concentrating full control in the Nominating Committee.

We wonder why the PSAA response to questions about its operations has been to adopt such extreme policies to reduce accountability and membership participation. Whose interests are they serving?

We are not alone with these concerns. We have spoken with a number of past and current council members who are frustrated with the governance practices within the PSAA.

On one important point we agree with Williams: The mission of the PSAA must be protected.

To better “connect the alumni to the university and each other,” we believe that the hardworking and devoted volunteers of the Penn State Alumni Association, and all alumni, should be provided with full and open opportunities for participation in the association.

Our alumni association should be for all alumni, not just a few insiders, and without concerns that the organization is serving two masters.

Our attempts to resolve these concerns through respectful discussion failed. Now we seek the opportunity to pursue good-faith efforts from inside the association as members of the council.

We believe alumni association voters are more than capable of deciding whether our efforts support the collective interests of our devoted alumni.

This story was originally published April 18, 2015 at 1:34 AM with the headline "Alice Pope: Alumni association eschewing inclusiveness."

**Want to see more content like this?**