# Rafacz Exhibit A

PENN STATE

# Penn State trustees undergo transparency training as part of settlement with Spotlight PA

**by Wyatt Massey of Spotlight PA State College** | Sept. 19, 2025



Penn State trustees at the board's public meeting on Sept. 12, 2025, in the 1855 Room at the Bryce Jordan Center.

GEORGIANNA SUTHERLAND / FOR SPOTLIGHT PA

STATE COLLEGE — All voting members of Penn State's board completed training on the Sunshine Act this month as part of the governing board's legal settlement with Spotlight PA over alleged violations of the transparency law.

The Pennsylvania Office of Open Records conducted the session during a closed-door gathering of the board last week. The training highlighted the state law's requirements of transparency from governing bodies, the value of public access, and the legal standards Penn State's board must follow when conducting a nonpublic meeting, according to agency materials.

As required by the settlement, Penn State released the names of trustees who participated in the live training or certified that they'd viewed a recording of the session. The participants were Robert Beard, Neeli Bendapudi, Ruby Bjalme, Randall Black, Donald Cairns, Suzan Collins, David Davis, Daniel Delligatti, Valerie Detwiler, Lynn Dietrich, Cynthia Dunn, Matthew Espenshade, Robert

Fenza, Anand Ganjam, Naren Gursahaney, Chris Hoffman, Kenneth Kane, David Kleppinger, Ali Krieger, Anthony Lubrano, Kelley Lynch, Evan Myers, Matthew McGloin, Uma Moriarity, Carl Nassib, Daniel Onorato, Joseph Paterno Jr., J. Gregory Pilewicz, Julie Anna Potts, Karen Quintos, Russell Redding, Tracy Riegel, Carrie Rowe, Nicholas Rowland, Mary Lee Schneider, Matthew Schuyler, Brandon Short, and Richard Sokolov.

The list includes all voting members of Penn State's board. Redding, Rowe, and Dunn are the state secretaries of agriculture, education, and conservation and natural resources, respectively.

Democratic Gov. Josh Shapiro, a nonvoting trustee who sits on the board because he is governor, did not complete the training. However, Shapiro's appointed representative on the Penn State board, Myers, who attends meetings in his place, did. Myers and Bendapudi are also nonvoting members.

Starting next year, new trustees will be offered the training.

"Following the Sunshine Act is a critically important obligation for college governing boards like this one, as the decisions they make may have monumental impact on thousands of students and staff," Liz Wagenseller, who led the session and is executive director of the OOR, wrote in a statement to Spotlight PA. "The Board of Trustees was very engaged, demonstrating a desire to follow the letter and spirit of the law."

The settlement mandated that Penn State offer the training to trustees. Penn State also agreed that, "At the next public meeting of the Board following each in person training, the Governance Committee shall provide a report identifying all Trustees who attended or certified that they viewed the training," according to the document.

On Sept. 12, the board's public meeting the day after the in-person training, Penn State did not provide the report identifying the trustees. David Davis, a governor-appointed trustee and vice chair of the board's governance committee, said the training "fulfilled the university's settlement agreement" and thanked the OOR.

After the meeting, Spotlight PA asked Rachel Pell, vice president for strategic communications, why the trustees' names were not provided. Pell responded that such a request would need to be submitted in writing.

Paula Knudsen Burke, the Pennsylvania attorney for the Reporters Committee for Freedom of the Press who represented Spotlight PA, emailed Pell, the university's top lawyer Tabitha Oman, and board Chair David Kleppinger this week seeking an explanation.

In an email response to Burke that Penn State also sent to Spotlight PA, Oman said the board did not release the trustees' names at the Sept. 12 meeting because some members had not yet reviewed a recording of the session. Penn State interpreted the settlement's use of "next public meeting" — which was defined in the agreement — to mean "meeting cycles," a term not used in the settlement.

"Our good faith approach to compliance with — and interpretation of — this provision stems solely from ambiguity surrounding this provision in the Agreement itself," Oman wrote.

For years, Spotlight PA has documented how the board met privately and may have run afoul of the Sunshine Act, including trustees' review of information about internal misconduct reports and access to the former president's diversity initiative before it was announced. The board's executive committee, a special group of top university and board leaders, also met privately for years to set board agendas. Following the newsroom's reporting, statistics about the misconduct reports are available online and the executive committee meets in public.

In October 2023, Spotlight PA and the Reporters Committee for Freedom of the Press sent the board a letter requesting the trustees "immediately cease holding improper executive sessions and conferences, advertise and record meeting minutes for all public meetings, and halt the practice of deliberating in secret." The university responded that it was following the law.

During the board's November 2023 meetings in University Park, Spotlight PA witnessed what it believed were potential violations of the open meetings law, including alleged misuses of the conference provision, and filed a lawsuit in the Centre County Court of Common Pleas. After the board's February and May 2024 meetings, the lawsuit was amended to include additional allegations.

The case was settled in June. As part of the agreement, when the board holds a "conference" session, a type of nonpublic meeting in which trustees cannot discuss agency business, it must disclose the person leading the session and the

topic. This was information that Penn State previously did not make public, and Pennsylvania law doesn't require this disclosure.

For example, during the board's public Friday meeting, Kleppinger said the board met privately that morning to learn about the university's plan to close campuses and hear the president speak about international student enrollment and the "broader federal policy landscape."

The settlement terms will last for five years. Read the full agreement here.



**Wyatt Massey**

# Rafacz Exhibit B




PENN STATE

# How Penn State trustees plan to vote on campus closures could run afoul of transparency law

**by Wyatt Massey of Spotlight PA State College** | May 7, 2025



ABBY DREY / CENTRE DAILY TIMES

The Penn State Board of Trustees plans to meet virtually this month to determine the fate of multiple campuses, a decision that will impact the futures of thousands of students and employees.

However, the online-only nature of the meeting could run afoul of Pennsylvania's public meetings law, according to legal experts.

"There's nothing in Pennsylvania law that allows a virtual only public meeting under the Sunshine Act," said Melissa Melewsky, media counsel for the Pennsylvania NewsMedia Association, of which Spotlight PA is a member.

If the meeting's legality is challenged in court, a judge could potentially overturn any decision made at the meeting, she added.

Trustees will not consider closures on a campus-by-campus basis when they hold the special meeting, a university spokesperson told Spotlight PA. Instead, they'll vote on a single plan from President Neeli Bendapudi proposing which campuses to shutter. The plan will require a simple majority to pass.

Trustees will gather at the University Park campus this week for a series of in-person meetings ahead of graduation festivities, but campus closures are not on the agenda.

According to three people with knowledge of the board's schedule, trustees are instead expected to vote on the president's proposal when they meet virtually this month. The trustees held a similar, virtual-only meeting last May to pass the $700 million Beaver Stadium renovation plan.

This structure could be problematic, Melewsky told Spotlight PA, as Pennsylvania's Sunshine Act — the law requiring transparency and public access to the meetings of governing bodies like Penn State's board — doesn't expressly allow for virtual-only meetings. However, only a judge can rule whether the law was broken.

"If there's an issue under the Sunshine Act and someone feels the law has been violated, they have a statutory right to pursue the issue in court," Melewsky said. "And if a court would find there was a violation, the court could do a number of things, including rescinding any official action taken at that public meeting."

In recent weeks, some trustees have questioned the university's stated reasons and goals behind shutting down locations, the first sign of public fractures among leaders over how Penn State is handling the statewide campus system.

Meanwhile, the people whose livelihoods and communities are at risk have grown more vocal.

An open letter to trustees asking Penn State to consider options other than closing locations received hundreds of signatures, though it's unclear if board leadership will see it. Andrea Adolph, a Penn State New Kensington professor who authored the piece, said the letter is too long for the board's online public

comment portal — the primary way the board gets public input. The website limits submissions to 500 words.

Penn State has not allowed in-person or virtual spoken comments during public meetings since 2021.

Joy Ramsingh, an attorney who specializes in public meetings law, told Spotlight PA a strong legal argument could be made that the board's conduct exploits loopholes in Pennsylvania transparency statute and is contrary to what the General Assembly intended.

"If you're going to go and you're going to have days of back-to-back meetings and then, five days later, you're doing a virtual meeting just because this is more of a stickier subject, I think you're in hot water as far as the Sunshine Act is concerned," Ramsingh said.

Neither Penn State's Office of Strategic Communications nor its board leaders responded to questions about the public comment procedures or the legality of its virtual meetings.

## Trustee and faculty pushback

The details of the president's proposal to close campuses remain unknown. The university has previously said it will keep at least eight of its locations — Abington, Altoona, Behrend, Berks, Brandywine, Great Valley, Harrisburg, and Lehigh Valley. These campuses have the largest enrollments and are in regions of the state with stable or growing populations.

The remaining locations — Beaver, DuBois, Fayette, Greater Allegheny, Hazleton, Mont Alto, New Kensington, Schuylkill, Scranton, Shenango, Wilkes-Barre, and York — are under review by Bendapudi's administration and could close after the 2026-27 academic year. The university has said it will retain a presence in Northeast Pennsylvania and the Pittsburgh region.

Until an announcement last month, it was unclear whether the university's governing body would be involved in the decision. A university spokesperson previously declined to say whether or how trustees would be involved, and the president said publicly that closing campuses was an administrative decision she would make. Board support might not be unanimous.

In April, a group of five current and former university leaders, including current alumni-elected trustees Ted Brown and Jay Paterno, published an op-ed in StateCollege.com calling on the university to delay a decision until other options are considered. The declining commonwealth campus enrollments, often cited in arguments for closure, have flattened in recent years and the statewide system's budget deficit costs Penn State less than 1% of its total budget, the group argued.

Paterno told Spotlight PA he would like to see more innovative choices for the campuses beyond staying open or closing. Trustees should be more involved with this plan given the potential impact, he said. "I would rather be a year late than a day early on a decision this big," Paterno said.

Alice Pope, another co-author of the op-ed and an emerita trustee who cannot vote on a proposal, told Spotlight PA she feels the decision is being rushed.

"Before we take the irreversible step of closing any of our campuses, it seems to me we should first come together as a community to reimagine how we should fulfill our land grant mission in the next hundred years," Pope wrote in a statement. (Brown did not respond to a request for comment for this story.)

The op-ed sparked Adolph, the New Kensington professor, to also write a public letter.

"Until very recently, we were all under the impression that the board was all there, all on board, and perhaps even hired [Bendapudi] to do this work," she told Spotlight PA.

As of May 6, Adolph's letter has received more than 600 signatures, including from alumni-elected trustee Barry Fenchak.

The statewide campus system, the letter argues, helps Penn State embody its land grant mission. Closing campuses would backtrack on the promises made to students across the state, the document reads.

Penn State's commonwealth system enrolls a more racially diverse group of people, a greater percentage of Pennsylvania residents, and more first-generation college students than University Park, according to data reviewed by Spotlight PA.

One signatory of Adolph's letter, Victor Brunsden, told Spotlight PA he wants trustees to reject Bendapudi's closure plan. The administration has not been

transparent about how it's making decisions, including the criteria that will determine which locations survive, the Penn State Altoona professor said. First, the university said closures were a financial decision, he said, then the administration said some campuses were not providing students with the "Penn State experience."

"That statement implies to me that unless students are able to go to every home football game, unless they are able to be in classes with 1,000 other students at the same time, they are not getting the 'Penn State experience,'" Brunsden said. "It's insulting to the work that a lot of my colleagues, both faculty and staff, do at the campuses. I think it's insulting to the students, too."

Last week, Nicholas Rowland, the academic trustee on Penn State's board, wrote in StateCollege.com that Penn State should not operate like a business. "Our campuses are not line items to cut or assets to liquidate; they are integral parts of the whole," Rowland said. "They are family. And while every family faces difficult seasons, we do not abandon one another when times are hard. We come together." (Rowland did not respond to a request for comment for this story.)

## Public comment

While these critiques from sitting trustees are notable, Penn State's board has 36 voting members. Dissent from even a dozen trustees would not stop or delay a closure plan. Rejection would be historic.

A previous Spotlight PA analysis of trustee voting data between 2019 and 2024 found that the trustees passed nearly 85% of measures without a single oppositional vote. The board voted down just four of the 328 measures it considered during this period, three of which were motions a trustee proposed mid-meeting. The other, in July, was an option for how trustees should be elected to the board.

Apart from those votes, most trustees had not recorded a single dissenting vote, the analysis showed.

A university spokesperson said the public can provide written comments online ahead of the meeting. Penn State has not allowed in-person or virtual spoken comments during public meetings since 2021.

Restricting public comment — through moves such as requiring submission deadlines or not allowing in-person statements — raises free speech questions, Ramsingh said. Limiting speech generally backfires, she said, and draws more attention to the topic.

"The board doesn't have to agree with what the public says," Ramsingh said. "But that's the piece that I think a lot of them don't understand: It's that hearing an opinion that is contrary to yours is not an attack. It's this idea that we can come together when we have different opinions. We can disagree. ... We're going to do all this together in the same room. But if you try to suppress that, this is like trying to drown a fire out with kerosene."

Adolph said her open letter is exactly the kind of statement that the trustees should hear in person. Otherwise, there's no way to ensure the trustees receive that perspective, she said.

Spotlight PA, in partnership with the Reporters Committee for Freedom of the Press, sued the trustees in December 2023 for alleged violations of the Sunshine Act. The suit — which was amended to include additional allegations following the board's February and May 2024 meetings — argues the trustees illegally conducted public business in private. The case is ongoing in the Centre County Court of Common Pleas.



**Wyatt Massey**



# Rafacz Exhibit C




PENN STATE FROM THE ARCHIVES 2024

# Penn State trustee scolded for making 'spectacle' in push to name football field after Joe Paterno

**by Wyatt Massey of Spotlight PA State College** | April 6, 2024



ABBY DREY / CENTRE DAILY TIMES

*This story was produced by the State College regional bureau of Spotlight PA, an independent, nonpartisan newsroom dedicated to investigative and public-service journalism for Pennsylvania. Sign up for our north-central Pa. newsletter, Talk of the Town, at spotlightpa.org/newsletters/talkofthetown.*

STATE COLLEGE — Leaders of Penn State's Board of Trustees recently admonished fellow Trustee Anthony Lubrano for creating a "public spectacle" and sharing "confidential information" related to his proposal to name the university's football field after Joe Paterno.

Board chair Matthew Schuyler and vice chair David Kleppinger suggested Lubrano should have instead raised the matter for discussion and deliberation during a private executive session — an action that likely would have run afoul of the state’s open meetings law.

“You chose not to take that opportunity,” Schuyler and Kleppinger wrote in the March 28 letter, first reported by WJAC. “Your public statement and withdrawn proposal were not only a distraction from the business and academic matters on the Board’s agenda for the February 16th meeting, they reflected poorly on the Board as a whole and therefore were not in the best interest of the institution.”

The exchange again raises concerns about whether the Board of Trustees properly follows Pennsylvania’s open meetings law in conducting its business. Under state law, executive sessions can only be held to discuss pending or current litigation, legal investigations, academic standings, and employment or property negotiations.

Melissa Melewsky — media law counsel for the Pennsylvania NewsMedia Association, of which Spotlight PA is a member — said the letter “illustrates a fundamental misunderstanding and potential misuse of executive sessions.”

“An issue like what to name the football [field] is not an executive session subject matter and should not be discussed anywhere other than a public meeting,” Melewsky said. “The Sunshine Act is a public access law, and the exceptions are narrowly written and should be narrowly applied.”

Lubrano, an alumni-elected trustee, said in an interview with Spotlight PA that Penn State officials wanted to silence any public discussion of the former football coach. Now board leaders are trying to control his behavior, he said.

"They think that it's in the best interest of the university for there never to be any public dissent," Lubrano said.

A Penn State spokesperson said via email that the university could not respond to questions from Spotlight PA because of an ongoing lawsuit between the newsroom and the university over alleged violations of the open meetings law by the Board of Trustees.

The board "stands firm in its commitment to openness and transparency as required by the Pennsylvania Sunshine Act," the spokesperson wrote.

## 'Paterno Field' controversy

Joe Paterno was Penn State's head football coach for 45 years and won two national championships. The board fired him in November 2011 during the Jerry Sandusky child sex abuse scandal. Joe Paterno died in January 2012.

In June 2012, Sandusky was convicted on 45 counts of child sex abuse and sentenced to up to 60 years in prison. Several top university officials were later convicted of misdemeanor child endangerment. Joe Paterno was never charged.

The trustees held two private meetings in January — a Jan. 16 "briefing" and a Jan. 29 "executive session" — to discuss the idea of naming the football field after Paterno.

At the board's public February meeting, Lubrano proposed "Paterno Field at Beaver Stadium" and a day to honor the longtime coach and his wife, Sue. Lubrano rescinded the resolution following a statement by fellow trustee and Paterno's son, Joseph "Jay" Paterno Jr.

In March, Lubrano told 98.7 FM that the board's private meetings in January included former Penn State general counsel Frank Guadagnino, President Neeli Bendapudi, and members of the president's team. Penn State leaders expressed concern that naming the football field after Paterno would jeopardize the university's accreditation and corporate sponsorships.

In their letter, Schuyler and Kleppinger said Lubrano shared "confidential information" during the radio appearance and a Feb. 16 interview with WJAC.

*While You're Here*

Spotlight PA's nonprofit reporting is a free public service, but it depends on your support. Give now to ensure it can continue.

CONTRIBUTE →

SPOTLIGHT PA

According to the board's governing documents, Penn State defines "confidential information" as any information about the university that is not public. For example, the board marked its 2022 trustee retreat schedule as confidential, according to records obtained by Spotlight PA.

The Sunshine Act does not require that conversations held in executive sessions remain confidential, Melewsky told Spotlight PA. In fact, a director or board member may have a duty to speak openly if they feel the executive session rules are being improperly applied to thwart public disclosure, she added.

The letter also accused Lubrano of bypassing the board's typical proposal process, which he said was untrue. He told Spotlight PA the board does not privately deliberate on other honorifics, such as its February vote to name the chemistry building the "Benkovic Building." Lubrano said he worked with other trustees on the proposal in the fall and board leadership knew he planned to present it in February.

"They were absolutely in the know every step of the way. And that's what's disheartening to me," he said in the interview with Spotlight PA.

Spotlight PA, in partnership with the Reporters Committee for Freedom of the Press, sued the trustees in December for alleged violations of the Sunshine Act. The suit — which was amended to include additional alleged violations following the February board meeting — argues the trustees illegally conducted public

business in private. The newsroom has documented a decadelong pattern of the board convening behind closed doors.

Penn State, in a filing last month, said Spotlight PA’s lawsuit included “unsupported, vague allegations and bald conclusions of law.” The university maintains that it follows the law.

The case is ongoing in the Centre County Court of Common Pleas.

***SUPPORT THIS JOURNALISM** and help us reinvigorate local news in north-central Pennsylvania at spotlightpa.org/donate/statecollege. Spotlight PA is funded by foundations and readers like you who are committed to accountability and public-service journalism that gets results.*



**Wyatt Massey**




# Rafacz Exhibit D

PENN STATE FROM THE ARCHIVES 2023

# Review of Penn State contracts reveals incorrect filings, questions about trustee disclosures

by Wyatt Massey of Spotlight PA State College | Sept. 21, 2023



GEORGIANNA SUTHERLAND / FOR SPOTLIGHT PA

*This story was produced by the State College regional bureau of Spotlight PA, an independent, nonpartisan newsroom dedicated to investigative and public-service journalism for Pennsylvania. Sign up for our regional newsletter, Talk of the Town.*

STATE COLLEGE — Penn State University reported incorrect financial information to the Pennsylvania Department of Education last winter, errors that remained public for months and highlight longstanding problems with how the school discloses and handles conflicts of interest.

The university acknowledged the incorrect filings following a Spotlight PA review of Penn State trustees' business connections, the trustees' annual conflict of interest disclosure, and reports the university is required to submit to the state when it receives taxpayer funds from the legislature.

In an email to Spotlight PA, a university spokesperson wrote that the December 2022 report contained “inaccurate information.” A spokesperson later told Spotlight PA the error was caused by the university including 2020 financial data in its 2022 filing.

An analysis of the filings and other university documents also revealed that at least one trustee did not disclose more than $250,000 in income to a related business over three years on university-mandated conflict of interest forms.

Penn State defended the trustee’s lack of disclosure, arguing the trustee was not aware of the transactions and was therefore not in violation of the university’s policy.

The university expects conflicts of interest with trustees because they have business ties, a spokesperson wrote in an email. The school’s approach in such instances, the spokesperson said, is determining “not how to eliminate conflicts, but rather, how conflicts should be appropriately disclosed.”

“Publication of our board conflict of interest disclosure summary is purely voluntary and done in the spirit of transparency,” the spokesperson wrote. “There is no law or regulation that requires us to publish this information and, to our knowledge, few peer institutions follow our lead.”

In a 2017 report on the university, former Pennsylvania Auditor General Eugene DePasquale said the board’s conflict policy — which the trustees approved and does not specify penalties for violations — makes it easy to “avoid accountability.”

## Limited insight

Each year, Penn State requires its trustees to disclose "actual or apparent" conflicts of interest and sign a statement agreeing to follow the board's policy. The university then publishes the conflicts online with descriptions of the involved companies and trustees and how much money was spent.

The board's bylaws define a conflict as when "a Trustee, family member or related entity has an interest that may lead the Trustee to act in a way that is incompatible with or a breach of the Trustee's fiduciary duty to the institution or use such Trustee's role to achieve personal gain or benefit or gain or benefit to family, friends or associates."

The conflict disclosure document is one of the few ways the public can understand the inner workings of Penn State, which is largely exempt from Pennsylvania's open records law.

The other main window into the four state-related universities — Lincoln University, Penn State, Temple University, and the University of Pittsburgh — is an annual list of all contracts over $1,000 that the schools must file every year they receive taxpayer money in an annual appropriation.

To better understand the university's business connections, Spotlight PA compared the Penn State trustees' disclosures from fiscal year 2022, as well as the trustee business connections detailed on the university's website, with the

list of thousands of contracts the university provided to the Pennsylvania Department of Education for the same fiscal year.

The newsroom conducted a similar analysis for previous fiscal years using copies of the board's disclosures for fiscal years 2020 and 2021.

*While You're Here*

Spotlight PA's nonprofit reporting is a free public service, but it depends on your support. Give now to ensure it can continue.

CONTRIBUTE →

SPOTLIGHT PA

## Problems with Penn State's filings

Spotlight PA's analysis revealed multiple problems, including contracts in which dollar amounts did not match the board's conflict of interest document and money paid to a trustee or a business connected to a trustee that was not disclosed.

In response to questions from Spotlight PA, Penn State acknowledged that it incorrectly claimed in its original report to have paid a trustee nearly $30,000 and that it overstated payments to a law firm connected to a trustee by more than $134,000 in fiscal 2022.

The total number of errors Penn State included in the report is unknown. Penn State did not respond to a question about whether the university had an estimate. The document was removed from the Department of Education's website in July and the state law mandating the public report does not detail any form of discipline for filing incorrect information.

On Monday, the department posted Penn State's corrected document.

In its original filing, Penn State reported to the state that it paid Trustee Jay Paterno nearly $30,000 in fiscal year 2022. In its statement to Spotlight PA, Penn State said there was no payment to Paterno in fiscal year 2022 and that its inclusion on the filing was an “error.”

However, the university did pay Paterno nearly $30,000 in fiscal year 2020. The payment was not included on the trustee’s conflict of interest disclosure that year.

A Penn State spokesperson said the money was part of a legal settlement and that Paterno “consulted with counsel and was advised that the litigation settlement payment in FY20 did not represent a conflict for the disclosure form.”

Paterno, reached by phone, confirmed the university’s statement and did not offer further comment.

David Kleppinger is vice chair of the trustee board and chair emeritus of the law firm McNees, Wallace and Nurick. The trustee disclosure document reported that the university paid the law firm $16,625.94 for work in Dauphin County in fiscal year 2022.

However, the university initially told the Department of Education that it paid the law firm a sum nine times greater.

A university spokesperson told Spotlight PA that the figure provided to the state was wrong. The corrected filing released this week reflects the amount listed on the trustee disclosure document.

## Unreported income

Penn State Trustee Stanley Rapp, who was previously a board member of the engineering firm Herbert, Rowland and Grubic, did not disclose any conflicts of interest for fiscal years 2020, 2021, and 2022 on his university-mandated form.

But according to filings with the Pennsylvania Department of Education, the university had a contract with Herbert, Rowland and Grubic each year during that period and paid the firm a total of $251,416.98 over the three years.

In a statement, a university spokesperson said the oversight was not a violation of the university’s policy because the board’s governing document requires that

trustees only report “known” conflicts.

The university spokesperson said the board’s 2023 disclosure document will reflect the payments to the engineering firm.

Rapp did not respond to multiple requests for comment by phone and email. Ryan Albright, director of marketing for Herbert, Rowland and Grubic, said in an email that Rapp left the firm’s board in 2022.

In his 2017 report on the university, DePasquale recommended that Penn State trustees and employees be subject to the state’s ethics act, which is overseen by the independent State Ethics Commission and carries financial penalties for violations.

The university argued its policies and board’s bylaws were adequate.

The auditor general questioned the university's stance, noting it was unclear whether the school penalizes trustees who fail to disclose conflicts. The report also noted that Penn State’s policy does not designate who would decide such penalties.

“The definitions of the provisions are not concise,” DePasquale’s report said of Penn State’s policy. “It is difficult to read, understand, and apply. The effect of this obfuscation is easily recognizable: the less clear the parameters, the easier it is to avoid accountability for and transparency about conflict transactions and dealings.”

The university has defended itself against recent criticisms of a perceived lack of transparency, including the board’s interpretation of Pennsylvania’s open meetings law that has allowed top Penn State officials to regularly meet in private for more than a decade. The board’s leadership has requested that trustees ask questions during private sessions rather than public meetings.

***SUPPORT THIS JOURNALISM** and help us reinvigorate local news in north-central Pennsylvania at spotlightpa.org/donate/statecollege. Spotlight PA is funded by foundations and readers like you who are committed to accountability and public-service journalism that gets results.*



## Wyatt Massey

# Rafacz Exhibit E




PENN STATE

# Penn State trustees rarely discuss key issues before voting — unless they're related to athletics or rules for members

**by Wyatt Massey of Spotlight PA State College** | Nov. 21, 2024



GEORGIANNA SUTHERLAND / FOR SPOTLIGHT PA

When Penn State University's trustees gather for official meetings, they tend to spend only a sliver of their time discussing their views or asking questions before a vote, if they speak at all.

A Spotlight PA analysis of public full board meetings since 2019 found that, on average, Penn State's board spends 7.6% of their meetings deliberating university business. The data also show that nearly two-thirds of the trustees' discussions focused on either athletics or internal board operations.

Other items considered by the board — such as the university’s $9.9 billion budget, strategic plan, and building projects — often passed with no or limited discussion.

A board that repeatedly votes yes without asking substantive questions “is not a well-functioning board,” and is not living up to its obligations, said Framroze Virjee, president of the Association of Governing Boards of Universities and Colleges.

Board members should support a decision when it is passed, he said, but a robust dialogue should occur before the vote.

“You shouldn’t simply accept whatever the administrative leadership brings as a potential action item — whether it’s the budget audit or a new building project or a merger or whatever it is. You look and do your homework, read, explore, investigate, and ask questions,” Virjee said. “Be curious, I would even say, with some level of skepticism because that’s healthy, healthy skepticism.”

## How much time Penn State's board deliberated

The total time, in minutes, that Penn State University's Board of Trustee spent deliberating on proposals compared to the total amount of time they met that year.




Chart: Wyatt Massey of Spotlight PA State College • Get the data • Created with Datawrapper

For this analysis, Spotlight PA reviewed recordings and meeting minutes of Penn State's 36-member board between 2019 and 2024 to track the total amount of discussion related to a vote.

The newsroom shared its findings and methodology with Penn State's Office of Strategic Communications and requested an interview with board leadership. The university did not respond.

## Athletics and operations

In May, Alvin de Levie, then an alumni-elected trustee, was the first to speak at the full board's special meeting to approve an up to $700 million renovation plan for Beaver Stadium. Seconds into his comments, though, an argument started with the board chair over whether trustees had enough time to consider the measure.

"This session is not meant to be point, counterpoint debating," said Matthew Schuyler, the board chair at the time.

De Levie later said: "I don't know yet how I'm voting because I want to deliberate. And quite frankly, we're not being given the opportunity to do so."

The special meeting, which featured around 40 minutes of discussion before the vote, was an outlier compared to the trustees' other gatherings.

Spotlight PA's analysis found that between 2019 and 2024, the full Penn State board met for nearly 49 hours and spent around 3 hours and 43 minutes, or 7.6%, of that time deliberating university business before a vote. The discussion in most meetings totals only a few minutes, if there is any at all.

But the May meeting was emblematic of another trend for the board. In recent years, Penn State trustees' public deliberations have been heavily weighted toward two topics: changes to the board's bylaws — including how trustees attain or retain a seat — and athletics-related proposals, including the stadium renovation, alcohol sales at athletics events, and renovations to a football building.

These two subjects accounted for nearly 143 minutes, or 64%, of the board's public deliberations since January 2019, Spotlight PA's analysis showed.

## What do Penn State trustees discuss at their meetings?

An analysis of trustees' comments before votes between 2019 and 2024 shows that Penn State University's board spent nearly two-thirds of their deliberations on either internal board operations or athletics-related proposals.




Chart: Wyatt Massey of Spotlight PA State College • Get the data • Created with Datawrapper

Public deliberation on other topics was more muted. Across the three years leading up to 2022 — when Penn State revealed a more than $150 million budget deficit over the previous fiscal year and implemented a partial hiring freeze — trustees discussed the university's budget for approximately 12 minutes, 11 of which were in July 2021. (The university's budget was approved each year.)

Among its Big Ten peers, Penn State's governing body is not necessarily an outlier. Journalists who report on other universities told Spotlight PA that discussions of key issues, or at least substantive disagreements among board members, rarely happen in public.

Board leadership should encourage public discussion, especially if such dialogue is not occurring, said Virjee, whose association guides university boards. Leaders should let proponents of a proposal discuss their views and explore weak points. Boards should also explore alternatives and discuss why those proposals are not as strong or well-suited for the university, he said.

"It is part of good governance to actually promote the examination of the work being done," Virjee said. A true leader, he continued, is "not afraid to have their work examined and doesn't take offense … if the initial proposal is changed."

## Questions of transparency

For years, people within the Penn State community have criticized the board over a perceived lack of transparency and open dialogue.

In 2013, amid the fallout from the Jerry Sandusky child sex abuse scandal, a committee from Penn State University Faculty Senate noted the university's governing board rarely held "vigorous public debates on complicated or controversial issues."

A year later, during a failed campaign for an alumni-elected board seat, Schuyler said trustees needed to be "vastly more transparent" with students, employees, and the public.

"We do this through open meetings and a true dialogue with the entire university community," Schuyler told the Centre Daily Times at the time.

But with Schuyler as chair, board leadership requested that trustees ask questions during a private session so the public meeting in May 2023 could move more quickly, according to internal communications. When a trustee spoke about university spending during the public meeting, Schuyler responded: "Thank you for coming to life at our public sessions and not mentioning these things at our previous three sessions discussing these matters."

In recent years, the university's board has regularly held private discussions that media law experts suggest could be running afoul of Pennsylvania's open meetings law, which requires governing bodies like Penn State's to conduct certain business in public.

Earlier this year, Spotlight PA revealed the board held private meetings to discuss whether to name the football field at Beaver Stadium after former coach Joe Paterno.

Anthony Lubrano, an alumni-elected trustee behind the naming effort, proposed and then rescinded the naming idea at the board's February meeting. A month later, board leadership scolded Lubrano for creating a "public spectacle" and

sharing “confidential information.” Instead, Schuyler and David Kleppinger, then the board’s vice chair, suggested Lubrano should have kept the matter out of public view.

Lubrano faces board removal over his proposal and his public statements in the weeks that followed, according to court records. The trustee argued the board’s action was retaliatory. A court order over who should pay legal fees has so far blocked board action on Lubrano’s removal.

Spotlight PA, in partnership with the Reporters Committee for Freedom of the Press, sued the trustees in December for alleged violations of the Sunshine Act. The suit — which was amended to include additional alleged violations following the board’s February and May meetings — argues the trustees illegally conducted public business in private.

In its legal response to the allegations, the university said the lawsuit includes “unsupported, vague allegations and bald conclusions of law.” The university maintains that it follows the law. The case is ongoing in the Centre County Court of Common Pleas.

Penn State’s board leadership has suggested it will change its operations to allow greater dialogue. In October, a committee of top university officials held its first public meeting in 13 years. The change, Schuyler said during the gathering, was to improve the board’s efficiency and increase discussion among trustees during meetings.

A week later, at the board’s 96-minute November meeting, trustees deliberated for just more than two minutes.



**Wyatt Massey**



# Rafacz Exhibit F




PENN STATE

# Penn State trustees pass almost 85% of measures without a single dissenting vote

**by Wyatt Massey of Spotlight PA State College** | Dec. 5, 2024



GEORGIANNA SUTHERLAND / FOR SPOTLIGHT PA

When Penn State University's administration brings a proposal to its board ofL trustees, the measure is all but assured to pass.

A Spotlight PA analysis of public full board meetings since 2019 found that nearlyL 85% of the proposals that Penn State's 36-member board considers pass withoutL a single dissenting vote.

The other 15% of proposals tended to face limited opposition, even for major decisions like tuition increases and the university's annual budgets that led to a $150 million deficit in 2022.

Give & Get 2X

Measures are also often approved with little, if any, public discussion.

The board's size prevents even alumni-elected trustees, the voting bloc most likely to dissent, from having the power to kill a given proposal. And recent revisions to how trustees get a board seat could shift the composition of this group of typically outspoken trustees.

Two trustees from that group face possible removal from the board — Barry Fenchak and Anthony Lubrano, who both have lawsuits pending against the university.

"You don't want a homogeneous, 'yes board,'" said Terry Mutchler, a lawyer with Obermayer Rebmann Maxwell & Hippel who represents Fenchak. "You want a situation where people have enough information to make common sense, reasonable, and visionary decisions. What I think is happening here, and I think the statistics would bear this out, is groupthink."

A university's governing body should support an administration, but it cannot be a rubber stamp, said Framroze Virjee, president of the Association of Governing Boards of Universities and Colleges. Boards must ask substantive questions about proposals, he said.

"This creates a sense of not only on the board, but of the stakeholders, that seriousness is being given to the question at hand," Virjee told Spotlight PA.

The newsroom shared its findings for this story with Penn State's Office of Strategic Communications and requested an interview with board leadership. The university did not respond.

## Counting the votes

For this analysis, Spotlight PA reviewed recordings and meeting minutes of the Board of Trustees' public meetings between 2019 and 2024. For each item that required a board vote during this time, the newsroom logged the number of opposing votes and who cast them. The analysis did not track abstentions, which were occasional. Consent agenda items were counted as individual votes, because the board periodically considered some of the items separately.

During the years Spotlight PA reviewed, Penn State's trustees considered 328 proposals. Of those, 277, or about 85%, did not receive a single dissenting vote.

Just 21, or about 6%, received at least two "no" votes. Nearly all board actions require a majority vote to pass, according to the group's bylaws.

### How often do Penn State board proposals receive a 'no' vote?

Nearly 85% of the proposals that Penn State's 36-member board considers pass without a single dissenting vote. In recent years, this included a hospital acquisition, tuition increases, and budgets in the years leading up to the 2022 revelation that the university had a more than $150 million annual deficit.

| | Total items that passed unanimously | Total Items that received at least one 'no' vote |
|---|---|---|
| 2019 | 64 | 1 |
| 2020 | 57 | 1 |
| 2021 | 44 | 9 |
| 2022 | 38 | 10 |
| 2023 | 34 | 15 |
| 2024 | 36 | 15 |

Chart: Wyatt Massey of Spotlight PA State College • Created with Datawrapper

The board only voted down four proposals, three of which were motions Fenchak made in the middle of a meeting. The other proposal, in July, was an option for how trustees should be elected to the board.

Apart from these votes, most trustees who served on the university's board over the past half decade did not record a single vote in dissent.

## Who votes 'no'

In July, seven of the eight alumni-elected trustees present for the meeting voted against changes to the board's bylaws that would allow a committee to determine which alumni could be on the ballot for board elections.

Despite the near-unanimous view from the alumni-elected trustees, the change passed by a large margin due, in part, to the size of Penn State's board.

The nine trustees that alumni elect to the board were most often the ones voting against proposals, Spotlight PA's analysis found. Some of these trustees have consistently voted against tuition increases, and they are among the most outspoken.

However, among these semi-consistent "no" voters, Fenchak is an outlier. Across the board's six full meetings in 2023 — the year after Fenchak was elected to the board — 15 items received at least one dissenting vote. Fenchak was involved in all of them. And for 10 of the items, he was the lone "no" vote.

Fenchak faces possible removal from the board over an interaction with a university employee that the board said violated its code of conduct. Weeks before those allegations surfaced, Fenchak sued the university's board for allegedly withholding information about how Penn State manages its $4.6 billion endowment. The case is ongoing in Centre County.

Lubrano could also lose his board seat after suggesting Penn State name its football field after former coach Joe Paterno in February, and for public statements in the weeks that followed, according to court records of an ongoing case in Lackawanna County.

Lubrano, who alumni reelected to the board in 2020, has also regularly voted against board proposals, including tuition increases and granting emeritus status to former trustees.

Daniel Brier, an attorney with Myers, Brier & Kelly who represents Lubrano, told Spotlight PA that Lubrano's fiduciary duties as a trustee require vigorous discussion.

"It strains credulity to suggest that it is a coincidence that the two board members who are most often dissenting are being sanctioned for separate reasons, unrelated to their disagreement with the board's practices," Brier said.

If Fenchak and Lubrano had not been on the board in the past five years — to either vote or suggest proposals for other trustees to consider — the total number of items that received at least one dissenting vote would drop from 51 to 17.

Mutchler, Fenchak's lawyer, told Spotlight PA the data should spur some soul-searching among the trustees. Her client's case, as well as other instances of questionable board transparency, she said, suggest board leaders might be driving the agenda and that some trustees are not provided with full information before their votes.

The university has not offered comments on either Fenchak's or Lubrano's cases because the litigation is pending.

Spotlight PA previously analyzed the board's public deliberations before votes, finding that Penn State's governing body rarely discusses motions in public before voting on them. Between 2019 and 2024, the university's board spent around 7.6% of its meeting time deliberating university business before a vote, the newsroom found. When deliberation occurs, it is often about athletics or internal board operations.



**Wyatt Massey**

