**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CENTRE DAILY TIMES,<br>SPOTLIGHT PA, and<br>STATECOLLEGE.COM,<br>Plaintiffs,<br>v.<br><br>DAVID KLEPPINGER,<br>DANIEL ONORATO, and<br>RICHARD SOKOLOV,<br>*in their official capacities*,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. ________ |

**DECLARATION OF ALICE POPE**

I, Alice Pope, declare as follows:

1. I am an emerita member of the Board of Trustees ("the Board") of Pennsylvania State University. I submit this declaration based on my personal knowledge.

2. I served as an alumni-elected trustee for Pennsylvania State University ("Penn State" or "the University") from 2014 until 2023 and have been an emerita trustee since 2023. I am a proud triple alumna of Penn State University with a bachelor's, master's, and Ph.D. from the University. I am passionate about improving and maintaining the quality of Penn State.

3. As I said when I was running for my fourth term as an alumni-elected trustee, serving as a representative for University stakeholders is a noble responsibility: "When we say 'We Are,' we're saying that 'We *All* Are Penn State,' each of us in our own way, we celebrate each others' achievements. We help each other when we fall. We support each other. That's what that's about." Colleen Nersten, *Academic Excellence & Student Success: Alice Pope Seeking Fourth Term in Board of Trustees Election*, Onward State (Apr. 28, 2023), https://perma.cc/JSM6-A5PF.

4. Throughout my service as a trustee, I have believed that all voices deserve to be heard, and all are needed to contribute to the betterment of our alma mater, now and into the future.

5. Consistent with that belief, I have spoken publicly on multiple occasions about Board governance and reform. I have spoken out about specific Board actions affecting the Penn State community, including controversial campus closures and the creation of a nominating subcommittee to screen alumni-elected Trustee candidates.

6. My ability to speak freely—even where the Board as a whole did not agree with me—was an essential part of fulfilling my duties as an alumni-elected trustee. I needed to be able to communicate with University stakeholders about

important issues before the Board, as well as advocate for policy that I believed stakeholders wanted and would benefit Penn State.

7. In 2012, I grew deeply concerned about the state of the Board, particularly because of its response to the Jerry Sandusky scandal. I was troubled by the Board's systemic failures of transparency, accountability, and oversight. A report issued publicly by the Pennsylvania auditor general in 2012 also criticized the Board for restricting public access to information and for discouraging trustees from speaking openly about disagreements with Board decisions. These concerns were shared by alumni, who elected me to the Board in 2014.

8. Since this report and being elected as a trustee, I have publicly advocated for greater transparency, including subjecting the University to Right-to-Know laws and ethics requirements, because I believed it would be in the University's best interests. I have continued to organize letter-writing campaigns, communicate directly with alumni and the public through a Facebook page, and advocate to state legislators for reforms to the Board's governance structure.

9. Additionally, between approximately 2013 and 2014, I authored or co-authored several opinion pieces in newspapers including The Patriot-News, Centre Daily Times, and The Morning Call. In these opinion pieces, I criticized the Board's governance practices and lack of transparency to the broader community.

10. I chose to make these statements publicly, rather than only internally, because I believed that Penn State is a public institution whose governance decisions affect the public at large.

11. In March 2024, fellow alumni-elected trustee Anthony Lubrano was reprimanded and subjected to an investigation after he spoke to the press about Board decisions, including issues related to tuition and University spending. From my perspective, the Board's response to his public comments reinforced my understanding that trustees who express dissent with the Board's decisions publicly risk formal discipline.

12. I also observed that after trustee Barry Fenchak publicly criticized Board actions, he was stripped of committee assignments. Following a legal battle, he became the first trustee in Penn State's history to be removed from the Board in June 2025 for reasons that struck me as pretextual. This further confirmed my understanding that public disagreement with the Board can lead to sanctions, marginalization, and even wholesale removal from the Board.

13. In July 2024, the Board adopted amendments to its Bylaws that restricted trustees from making "negative" or "critical" public statements not only about the Board or the University, but also about students, alumni, faculty, staff, and other members of the University community, and to require trustees to extend

goodwill in public forums, including social media, with violations potentially resulting in sanctions or removal.

14. In May 2025, the Board voted to close seven of its twenty campuses. I greatly opposed these closures and again found the Board's transparency around the closures lacking. In April of that year, I had co-authored an op-ed in StateCollege.com calling on the University to delay a decision until other options are considered.

15. I provided a statement to the news site Spotlight PA expressing my view that the decision on campus closures was being rushed. My statement appeared in an article published on May 7, 2025.

16. I also participated in a Zoom press conference with alumni-elected trustees to discuss these campus closures with the public.

17. Eight days later, I received a letter from Board Chair David Kleppinger, Board Vice Chair Richard Sokolov, and Governance Committee Chair Daniel Onorato. Their letter advised that my participation in the press conference on May 22, 2025, violated the amended § 2.04 of the Bylaws, which requires trustees to coordinate media appearances with the Board Office. A true and correct copy of that letter is attached hereto as Pope Exhibit A.

18. The letter also cited the amended § 2.03(c) of the Bylaws, which states that "Negative or critical public statements about the Board, the University

or its students, alumni, community, faculty, staff, and other stakeholders do not serve the University's interests and are inconsistent with a Trustee's fiduciary obligation to act always in the best interests of the University." The letter further stated that I should "avoid social media conversations critical of your fellow Trustees," which I understood to implicate the posts and messages on my Facebook page.

19. I understood this letter to be a formal reprimand for violating the Code of Conduct by expressing my views on University governance to the public without formally clearing my comments with the Board Office. I interpreted the letter as a direct warning that further public statements could result in harm to my standing within the Board and could affect whether the Board would allow me to serve on key committees or appear on the ballot were I to run for an additional term.

20. The Board leadership's actions conveyed to me that public speech outside Board-approved internal channels could carry professional and reputational consequences. As a result of the Board's policies and its disciplinary actions against outspoken trustees, I have become more cautious and selective about what I say publicly, even when I believe speaking would benefit the University and its community—particularly the alumni community that elected me to serve on the Board.

21. My concern about professional and reputational consequences intensified when the Board adopted additional amendments to the Bylaws in November 2025.

22. The November 2025 amendments included new criteria for becoming a trustee emeritus, which included review of the trustee's "record of service (as maintained by the Office of the Board including any warning, reprimands, or letters of censure received while serving on the Board)."

23. I understand those November 2025 amendments to the Bylaws, adopted mere months after I received one such written admonishment from Chair Kleppinger, Vice Chair Sokolov, and Governance Committee Chair Onorato, to further restrict my ability to publicly dissent from majority Board decisions without suffering adverse consequences.

24. But for those restrictions and the threat of discipline, I would speak fully and without limitation.

25. I remain willing to speak openly and candidly about my experiences on the Board and its governance issues described above. I am passionate about maintaining Penn State as an integral institution of higher education for the Commonwealth of Pennsylvania. I hope to speak out to hold its leadership accountable and hold the University to the highest standards.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 5/18/26

Alice Pope

Alice Pope
Trustee Emerita,
Pennsylvania State University