IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CENTRE DAILY TIMES, SPOTLIGHT PA, and STATECOLLEGE.COM,<br>*Plaintiffs*,<br>v.<br>DAVID KLEPPINGER, DANIEL ONORATO, and RICHARD SOKOLOV,<br>*Defendants*. | Civil Action No. 4:26-cv-01442<br>(Chief Judge Matthew W. Brann) |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**


Andrew R. Stanton (Pa. #93409)
Susan E. Kessler (Pa. #322558)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
skessler@jonesday.com

Anthony J. Dick (*pro hac vice* pending)
Anthony J. Jeffries (*pro hac vice* pending)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
ajdick@jonesday.com
ajjeffries@jonesday.com

*Counsel for Defendants David Kleppinger, Daniel Onorato, and Richard Sokolov*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

BACKGROUND ........................................................................................2

A. The Board ........................................................................................2

B. The Code of Conduct ........................................................................................3

C. This Case ........................................................................................5

LEGAL STANDARD ........................................................................................5

ARGUMENT ........................................................................................6

I. Plaintiffs' Request for Preliminary Relief is Moot. ........................................6

A. Plaintiffs have standing to seek relief only as to emeriti trustees. ........6

B. Recent amendments to the Bylaws fully redress Plaintiffs' claimed injury. ........................................................................................8

II. Plaintiffs' First Amendment Claim Fails on the Merits. ..............................12

A. The Code of Conduct complies with *Garcetti*. ..................................13

B. Because *Garcetti* governs, Plaintiffs' First Amendment arguments are irrelevant. ........................................................................14

C. *Garcetti* applies to the trustees. ......................................................17

III. Plaintiffs' Delay Precludes Preliminary Injunctive Relief. ..........................21

CONCLUSION ........................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)....7

*Am. Bird Conservancy v. Kempthorne*,
559 F.3d 184 (3d Cir. 2009) ....8, 9

*Amalgamated Transit Union Local 85 v. Port Auth.*,
39 F.4th 95 (3d Cir. 2022) ....14

*Ammond v. McGahn*,
532 F.2d 325 (3d Cir. 1976) ....11

*Benezet Consulting LLC v. Sec'y*,
26 F.4th 580 (3d Cir. 2022) ....7

*Benner v. Oswald*,
444 F. Supp. 545 (M.D. Pa. 1978)....19

*Benner v. Oswald*,
592 F.2d 174 (3d Cir. 1979) ....19, 20

*Black United Fund of N.J., Inc. v. Kean*,
763 F.2d 156 (3d Cir. 1985) ....9

*Blair v. Bethel Sch. Dist.*,
608 F.3d 540 (9th Cir. 2010) ....18

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ....18

*Borowski v. Kean Univ.*,
2025 WL 1806643 (D.N.J. July 1, 2025), *appeal filed*, No. 25-2303 (3d Cir. July 11, 2025)....16

*Cal. Bankers Ass'n v. Shultz*,
416 U.S. 21 (1974)....13

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
451 F.3d 1257 (11th Cir. 2006) ....................7

*Cont'l Grp. v. Amoco Chems. Corp.*,
614 F.2d 351 (3d Cir. 1980) ....................12

*Croft v. Donegal Twp.*,
2021 WL 1146285 (W.D. Pa. Mar. 25, 2021) ....................18

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ....................21, 22

*Democracy Rising PA v. Celluci*,
380 F. App'x 155 (3d Cir. 2010) ....................9

*Doe v. Burlew*,
165 F.4th 525 (6th Cir. 2026) ....................6

*Dougherty v. Sch. Dist. of Phila.*,
772 F.3d 979 (3d Cir. 2014) ....................14, 15

*Fenchak v. Pa. State Univ.*,
2026 WL 1045065 (E.D. Pa. Apr. 17, 2026) ....................20

*Fenchak v. Pa. State Univ. Bd. of Trs.*,
No. 2025-cv-0882-CI (Pa. Ct. Com. Pls. Aug. 25, 2025) .................... 12-13

*Finkelman v. NFL*,
810 F.3d 187 (3d Cir. 2016) ....................8

*Foote v. Town of Bedford*,
642 F.3d 80 (1st Cir. 2011) ....................21

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) ....................passim

*Gill v. Whitford*,
585 U.S. 48 (2018) ....................7

*Houston v. Twp. of Randolph*,
934 F. Supp. 2d 711 (D.N.J. 2013), *aff'd*, 559 F. App'x 139 (3d Cir. 2014) ....................21

*Hyland v. Wonder*,
972 F.2d 1129 (9th Cir. 1992) ....................................................................21

*Jenevein v. Willing*,
493 F.3d 551 (5th Cir. 2007) ...............................................................18, 19

*Jerri v. Harran*,
625 F. App'x 574 (3d Cir. 2015) ...........................................................20, 21

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022)...................................................................................16

*Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*,
237 F.3d 186 (3d Cir. 2001) ................................................................ 10-11

*Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach*,
506 F. Supp. 3d 229 (D. Del. 2020).........................................................10

*Lewis v. BT Inv. Managers, Inc.*,
447 U.S. 27 (1980).....................................................................................13

*Lewis v. Casey*,
518 U.S. 343 (1996).....................................................................................6

*Marcavage v. Nat'l Park Serv.*,
666 F.3d 856 (3d Cir. 2012) .......................................................................10

*Milwaukee Deputy Sheriff's Ass'n v. Clarke*,
574 F.3d 370 (7th Cir. 2009) ......................................................................14

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)...................................................................................18

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................................................................................6, 7

*Nat'l Ass'n for the Advancement of Multijurisdictional Practice v. Castille*,
66 F. Supp. 3d 633 (E.D. Pa. 2014).........................................................15

*Nextel W. Corp. v. Unity Twp.*,
282 F.3d 257 (3d Cir. 2002) ........................................................................9

*Oh v. Phila. Cnty. Bd. of Elections*,
2008 WL 2779006 (E.D. Pa. July 16, 2008) .....................................................19

*Pa. Fam. Inst. v. Black*,
489 F.3d 156 (3d Cir. 2007) ..........................................................................7, 8

*Parker v. Governor of Pa.*,
2021 WL 5492803 (3d Cir. Nov. 23, 2021) .......................................................10

*Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*,
235 F.3d 1243 (10th Cir. 2000) .......................................................................20

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009)..........................................................................................16

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024)..........................................................................................11

*Versarge v. Twp. of Clinton*,
984 F.2d 1359 (3d Cir. 1993) ....................................................................... 20-21

*Weaver v. U.S. Info. Agency*,
87 F.3d 1429 (D.C. Cir. 1996)...........................................................................15

*Werkheiser v. Pocono Twp.*,
780 F.3d 172 (3d Cir. 2015) ......................................................................17, 19

*Winder v. Erste*,
566 F.3d 209 (D.C. Cir. 2009)...................................................................... 15-16

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008)..................................................................................................6

**STATUTES**

15 Pa. Stat. & Cons. Stat. § 5103.......................................................................2

15 Pa. Stat. & Cons. Stat. § 5717.................................................................2, 19

Wyo. Stat. Ann. § 21-18-308 .............................................................................20

**OTHER AUTHORITIES**

The Association of Governing Boards of Universities and Colleges, *Models of Governance in Higher Education: AGB Principles vs. Ideologically Driven Initiatives* 2, https://agb.org/wp-content/uploads/2025/08/AGB-ModelsOfGovernance-Aug1Update.pdf.......................17

The Ohio State University Board of Trustees, *Resolution No. 2022-16: Statement of Expectations for The Ohio State University Board of Trustees* (adopted Aug. 19, 2021), https://trustees.osu.edu/sites/default/files/documents/2021/11/Full_Board_Public_Session_Materials_Nov21.pdf.........................................................................................16

The University of Texas System Board of Regents, *Rule 10101: Board Authority and Duties* § 7 (amended Nov. 20, 2025), https://www.utsystem.edu/board-of-regents/rules/10101-board-authority-and-duties ......................................................................... 16-17

## INTRODUCTION

Like at many major institutions, public and private, the Board of Trustees ("Board") of The Pennsylvania State University ("University") has adopted, as part of the University's Bylaws, a Code of Conduct imposing certain rules for trustees' official communications. Plaintiffs, three news organizations, seek a preliminary injunction against the Code of Conduct on the theory that it violates the First Amendment by restraining trustees from speaking with them about Board matters. Their motion should be denied because it is moot and meritless.

Plaintiffs' only asserted Article III injury is that the Code of Conduct keeps them from freely hearing from one specific "willing speaker" who is an emeritus trustee. Recent Bylaw amendments have mooted that issue by providing that the Code no longer applies to emeriti trustees. Therefore, Plaintiffs' claims no longer present a live case or controversy.

Even if the case were not moot, Plaintiffs' claim fails on the merits under Supreme Court precedent they ignore. The challenged rules apply only when trustees are speaking as part of their official duties. And when public servants speak "pursuant to their official duties," the First Amendment does not apply. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

In all events, Plaintiffs' motion should be denied because they cannot satisfy the equitable factors required for urgent preliminary injunctive relief. They waited

almost two years to challenge the Code provisions. That delay provides an independent reason to deny their motion.

## BACKGROUND

### A. The Board

The Board "makes decisions and instructs the Administration" on significant issues for the University. Harvey Decl. Ex. 1 ("Bylaws") § 2.04(a). It has 38 trustees, chosen in a number of ways. *Id.* § 2.01.

- The Board chooses six trustees representing business and industry, three at-large trustees, one student trustee, and one faculty trustee;
- Alumni and former students choose nine trustees;
- The Governor of Pennsylvania chooses six trustees;
- County agricultural societies and associations choose six trustees; and
- The remaining six seats are held *ex officio* by state officials, the University President, and the past president of the Alumni Association.

*Id.* However chosen, all active trustees are treated as directors of a not-for-profit corporation under Pennsylvania law and have "a fiduciary relationship to the University." *See id.* §§ 1.01, 8.07; 15 Pa. Stat. & Cons. Stat. § 5103. Their duties run "solely to the" University "and not to any member or creditor or any other person or group." 15 Pa. Stat. & Cons. Stat. § 5717.

In addition, a former trustee can be given the "honorary title of Trustee Emeritus." Bylaws, Election Appendix § 9(1). That honorific does not entail any

powers or duties, but "Trustees Emeriti may be invited to serve the University" as needed. *Id.* § 9(3).

### B. The Code of Conduct

Trustees have the duty, "in connection with their service as a Trustee," to "conduct themselves in a manner that is in keeping with" their "crucial fiduciary responsibilities towards the University … as well as the mission and values of the University." Bylaws § 2.03(a). The Bylaws' Code of Conduct fleshes out that requirement. Trustees must, for example, undertake trustee activities "in good faith and always in the best interests of the University, upholding the University's reputation for integrity and excellence," and "conduct themselves ethically, demonstrating honesty, integrity, fairness, respect and professionalism toward all matters and persons." *Id.* § 2.03(b), (d).

As relevant here, trustees must also "support majority decisions of the Board and work cooperatively with fellow Board members and the Administration to advance the University's goals." *Id.* § 2.03(c). The Code of Conduct further cautions that "[n]egative or critical public statements about the Board, the University or its students, alumni, community, faculty, staff, and other stakeholders do not serve the University's interests and are inconsistent with a Trustee's fiduciary obligation to act always in the best interests of the University" and reminds trustees to "extend goodwill to one another and to all members of the University community in board

sessions and in public forums, including social media." *Id.* Additionally, because "external communication of an individual Trustee's views can be misconstrued to be an expression of the Board's position as a whole," trustees must "coordinate all media and press interactions relating to matters that have come before the Board with the Board Office in advance" and "respect guidance" from the Board Office or Office of Strategic Communications regarding those interactions. *Id.* § 2.04(c).

Again, those obligations apply to trustees only "in connection with their service as a Trustee." *Id.* § 2.03(c). The Board recently amended the Bylaws to reinforce that point, making clear that the above obligations apply only when trustees are speaking "pursuant to their official responsibilities." *Id.* The amendment similarly clarified that the obligation to coordinate media and press interactions applies only to "interactions done in a Trustee capacity." *Id.* § 2.04(c).

Until recently, the Code of Conduct applied to emeriti trustees to a limited extent, only when they were "representing the University." Dkt. No. 1 ("Compl.") Ex. 1 § 2.03(a). But, in line with earlier changes reducing the role of emeriti trustees, recent amendments to the Bylaws on July 17, 2026, establish that the Code of Conduct now does not apply to emeriti trustees. *See* Harvey Decl. ¶¶ 4-7; Bylaws § 2.03(a).

### C. This Case

Plaintiffs are news outlets that cover the University and see "trustees as critical sources for their reporting." Compl. ¶ 2. They do not claim the University is restricting their speech, but instead claim that their "right to receive trustee speech" is being violated. *Id.* ¶ 15. In particular, they wish to obtain trustees' statements about "Board matters," and they believe the Code of Conduct makes trustees less willing to speak with them about the Board's work. *Id.* ¶ 11.

The Complaint does not identify any active trustee who wishes to speak with Plaintiffs but is restrained by the Code of Conduct. Instead, the only potential willing speakers the Complaint identifies are Dr. Alice Pope, an emeritus trustee, and Anthony Lubrano, whose Board service ended June 30, 2026. *Id.* ¶¶ 57-58, 66. Plaintiffs claim that provisions added to the Code of Conduct in July 2024, along with amendments made in November 2025, violate trustees' free-speech rights and Plaintiffs' derivative right to listen. *Id.* ¶ 5. They now seek a preliminary injunction barring enforcement of Bylaws Sections 2.03(c) and 2.04(c). Dkt. No. 15 ("PI Br."). Because Plaintiffs' brief was filed before Bylaws were amended on July 17, 2026, it does not address the now-current version of the Bylaws. *See* Harvey Decl. ¶ 7.

## LEGAL STANDARD

To obtain a preliminary injunction, Plaintiffs must show: (1) likelihood of success on the merits, (2) irreparable harm, (3) that the balance of the equities favor

relief, and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## ARGUMENT

### I. Plaintiffs' Request for Preliminary Relief is Moot.

To have a "cognizable injury" for a right-to-listen claim, the plaintiff must identify a willing speaker with whom it has "a concrete, specific connection," and who is being restrained from speaking with the plaintiff. *Murthy v. Missouri*, 603 U.S. 43, 75 (2024). Here, the Plaintiffs claim that the University is infringing their rights by preventing trustees from speaking with them. But they identify only one willing speaker: Dr. Pope, an emeritus trustee. Compl. ¶ 66.[1] Because the Code of Conduct no longer applies to emeriti trustees, Plaintiffs no longer have any live injury, their claims are moot, and their request for preliminary relief must be denied.

#### A. Plaintiffs have standing to seek relief only as to emeriti trustees.

"Courts may not grant relief that goes beyond the violation 'that produced the injury in fact that the plaintiff has established.'" *Doe v. Burlew*, 165 F.4th 525, 530 (6th Cir. 2026) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Here, the only cognizable injury Plaintiffs have asserted is infringement of their right to listen to Dr. Pope. At most, that injury gives them standing to challenge application of the

[1] Plaintiffs also discuss Anthony Lubrano, but his Board service ended June 30, 2026. Compl. ¶ 58. He therefore cannot support any claim for prospective relief.

Code of Conduct to Dr. Pope. *Gill v. Whitford*, 585 U.S. 48, 73 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

Plaintiffs' standing to assert a "right to listen depends entirely on the infringement on the rights of [the] willing speaker" they have identified. *Pa. Fam. Inst. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007). It is an "entirely derivative" theory of injury that provides a form of "third party standing" to seek to vindicate the speaker's right to speak. *Id.* at 165, 167. This means the relief available can go no further than what the willing speakers could have obtained if they sued. *See Benezet Consulting LLC v. Sec'y*, 26 F.4th 580, 586-87 (3d Cir. 2022) (listener's claim was moot where the specific speakers she wanted to hear obtained relief); *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270-74 (11th Cir. 2006) (plaintiffs may only challenge provisions of an ordinance that injure them). Any other rule would transform the right to listen into a "boundless theory of standing," allowing virtually anyone to challenge any supposed restriction on third parties' speech. *Murthy*, 603 U.S. at 75 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013)).

Under those principles, Plaintiffs have Article III standing to seek relief only insofar as it would remedy "Dr. Pope['s] … hesitation to speak freely with" them.

PI Br. at 11. Since Plaintiffs have identified no other willing speakers, they do not have standing to challenge any restrictions that apply to anyone else.[2]

### B. Recent amendments to the Bylaws fully redress Plaintiffs' claimed injury.

The Board, in keeping with earlier amendments limiting the emeritus trustee role, amended the Bylaws on July 17, 2026 to remove the provision that required emeriti trustees to adhere to the Code of Conduct. *See* Harvey Decl. ¶¶ 4-7. As a result, Plaintiffs no longer have any live injury. Their request for preliminary relief is thus moot.

**1.** "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Am. Bird Conservancy v. Kempthorne*, 559 F.3d 184, 188 (3d Cir. 2009) (cleaned up). They have. Plaintiffs claim that the Code of Conduct prevents them from hearing from Dr. Pope. Now that the Code does not apply to emeriti trustees, however, it cannot interfere with Plaintiffs' right to listen to her. *See Pa. Fam. Inst.*, 489 F.3d at 166. So there is no longer "any occasion for

---

[2] Plaintiffs purport to "reserve the right to conduct discovery" on whether other trustees want to speak with them. PI Br. at 11 n.4. But such "promises of future" evidence do not suffice when "no facts supporting plaintiffs' theory of injury appear within the four corners of the complaint." *Finkelman v. NFL*, 810 F.3d 187, 202 (3d Cir. 2016).

meaningful relief." *Am. Bird Conservancy*, 559 F.3d at 188. Plaintiffs' request for an injunction is moot.

This case mirrors another case involving a moot right-to-listen claim, *Democracy Rising PA v. Celluci*, 380 F. App'x 155 (3d Cir. 2010). There, an organization sought to challenge a judicial-conduct canon that did not allow judicial candidates to make statements that appeared to commit them on issues that were likely to come before their courts. *Id.* at 156-57. Democracy Rising claimed that "several candidates indicated a desire and willingness" to answer such questions but for the relevant canon. *Id.* at 157. But while the case was pending, the Pennsylvania Supreme Court, in response to a parallel case making the same argument, amended the canon to remove the most objectionable piece. *Id.* The Third Circuit held that the plaintiffs' claims were moot "because of the clear absence of any judicial candidate who would have been willing to speak *but for* the *amended* Canon." *Id.* at 160; *see also Nextel W. Corp. v. Unity Twp.*, 282 F.3d 257, 262 (3d Cir. 2002) (Alito, J.) ("[I]f the amendment provides sufficient relief to the plaintiff, the claim becomes moot."). Here, as in *Democracy Rising*, "[t]he raison d'etre for [an] injunction no longer exists." *Black United Fund of N.J., Inc. v. Kean*, 763 F.2d 156, 160 (3d Cir. 1985). Plaintiffs' motion is thus moot.

**2.** Plaintiffs may argue that the voluntary-cessation exception keeps their case alive. But that exception does not apply here because there is no reasonable chance the restriction in question will be reimposed.

When challenged restrictions are removed, a case is moot unless there is some reason to "expect that future constitutional violations will recur." *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 861 (3d Cir. 2012). In applying that rule, courts "generally presume[] that government officials act in good faith" and will not reimpose the restriction unless there is some "evidence to the contrary." *Parker v. Governor of Pa.*, 2021 WL 5492803, at *4 (3d Cir. Nov. 23, 2021). Here, there is no such evidence. The Board recently exempted emeriti trustees from the Code of Conduct as a natural consequence of 2025 amendments that limited the role of emeriti trustees in general. Harvey Decl. ¶¶ 4-7; *Compare* Compl. Ex. 1 Elections Appendix § 9 *with* Compl. Ex. 2 Elections Appendix § 9. There is thus "no realistic chance" that the restriction will be applied to emeriti trustees "before the Court can reach the merits of the case," so there is no need for a preliminary injunction. *Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach*, 506 F. Supp. 3d 229, 233-34 (D. Del. 2020); *cf. Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001) ("[S]tatutory changes that discontinue a challenged practice are usually enough to render a case moot, even if

the legislature possesses the power to reenact the statute after the lawsuit is dismissed." (cleaned up)).

**3.** At the very least, the change to the Bylaws exempting emeriti trustees precludes a preliminary injunction because it shows that Plaintiffs do not need "an extraordinary equitable remedy" that exists "to preserve the relative positions of the parties until a trial on the merits can be held." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (cleaned up).

*Ammond v. McGahn* illustrates the point. 532 F.2d 325 (3d Cir. 1976). There, a state senator, Alene Ammond, challenged her allegedly improper removal from the Democratic Caucus. *Id.* at 326-28. Ammond had been re-admitted after the district court granted a temporary restraining order, and the district court then granted a preliminary injunction. *Id.* at 328. The Third Circuit reversed the preliminary injunction. *Id.* at 329. Even though Ammond's re-admission had come only by court order, it was "not clear, and far from imminent," that she would be expelled again, so she faced no threat of "immediate irreparable injury" that could justify a preliminary injunction. *Id.*

That logic applies even more forcefully here. Rather than providing relief only after a TRO, the Board changed its Bylaws of its own accord. There is thus no current restriction on the Plaintiffs' ability to communicate freely with the emeriti trustees at all. As a result, there is nothing to temporarily enjoin. Any speculation

by Plaintiffs that the Board might reverse course in the future is not an "immediate irreparable injury" that can justify a preliminary injunction. *Id.*; *see also Cont'l Grp. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (injunctive relief "may not be used simply to eliminate a possibility of a remote future injury").

## II. Plaintiffs' First Amendment Claim Fails on the Merits.

Even if this case were not moot, Plaintiffs' arguments would fail on the merits because they ignore the precedent that governs the trustees' First Amendment rights. "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, 547 U.S. at 418. Public entities need "a significant degree of control over" the "words and actions" of those who serve them. *Id.* The First Amendment thus does not protect statements public servants make "pursuant to their official duties." *Id.* at 421.

That rule precludes Plaintiffs' First Amendment claim. Penn State trustees are among the public servants to whom *Garcetti*'s rule applies. And as has always been the case, and as the recent amendments to the Bylaws make even more clear, the Code of Conduct restricts statements only to the extent made pursuant to trustees' official duties or in their official trustee capacity. Thus, the Court of Common Pleas, faced with a challenge to the Bylaws under the Pennsylvania Constitution's more expansive free-speech protections, held them constitutional because they are constitutionally "inoffensive" and merely "represent the Board's right to self-

governance." Opinion & Order at 7, *Fenchak v. Pa. State Univ. Bd. of Trs.*, No. 2025-cv-0882-CI (Pa. Ct. Com. Pls. Aug. 25, 2025). Those restrictions are likewise entirely consistent with the federal First Amendment under the Supreme Court's decision in *Garcetti*. Plaintiffs' arguments, which simply ignore *Garcetti*, thus fail to show any constitutional violation.

### A. The Code of Conduct complies with *Garcetti*.

The provisions of the Code of Conduct that Plaintiffs challenge govern only the speech that trustees engage in pursuant to their official responsibilities as trustees. And the First Amendment does not apply to such official-capacity speech.

The Code of Conduct applies only to trustees' work as trustees—they are subject to sanction if they fail "to adhere to" the Code "*in connection with their service as a Trustee*." Bylaws § 2.03(a) (emphasis added). This was always clear for emeriti trustees, who were only ever subject to the Code "[w]hen representing the University." Compl. Ex. 1 § 2.03(a). And now emeriti trustees are exempt from the Code. As to active trustees, the amendments clarify that the restrictions apply only when trustees are "speaking pursuant to their official responsibilities," *id*. § 2.03(c), or appearing "in a Trustee capacity," *id*. § 2.04(c).[3]

[3] In evaluating Plaintiffs' First Amendment claim, the Court considers the Bylaws "as they now stand, not as they once did." *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 49 n.21 (1974); *see also Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 52 (1980).

Because the Code of Conduct governs only trustee speech "pursuant to their official duties," it plainly satisfies the First Amendment. *Amalgamated Transit Union Local 85 v. Port Auth.*, 39 F.4th 95, 103 (3d Cir. 2022) (quoting *Garcetti*, 547 U.S. at 421). After all, "[i]f an employee's job is to speak, the First Amendment does not prevent a government employer from controlling the speech for which the employee is employed." *Id.*; *see also Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 383 (7th Cir. 2009) ("By requiring the regulated speech to be 'official,' the Policy properly restricts *only* speech grounded in or owing its existence to the employees' job duties.").

### B. Because *Garcetti* governs, Plaintiffs' First Amendment arguments are irrelevant.

Plaintiffs argue that the provisions they challenge are unconstitutional prior restraints and improperly content-based. But "[w]hen public employees speak 'pursuant to their official duties,' that speech does not receive First Amendment protection." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 987 (3d Cir. 2014) (quoting *Garcetti*, 547 U.S. at 421). Plaintiffs' First Amendment arguments thus fail.

Before a prior restraint "may be unconstitutional, it must apply to speech protected by the First Amendment." *Milwaukee Deputy Sheriff's Ass'n*, 574 F.3d at 382. Thus, because public employees do not have any First Amendment right to engage in official-capacity speech contrary to their employer's direction, they do not

have a right to be free from prior restraints on such unprotected speech. *See id.*; *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1443 (D.C. Cir. 1996) (even with respect to prior restraints that affect citizen speech, "courts have uniformly assessed prior restraints in the setting of government employment by standards less demanding than those used for traditional prior restraints").

In any event, none of the challenged provisions is a prior restraint. To be so, the restriction "must at least require government approval before engaging in speech, and … must give the government discretion to grant or deny the approval." *Nat'l Ass'n for the Advancement of Multijurisdictional Practice v. Castille*, 66 F. Supp. 3d 633, 656 (E.D. Pa. 2014). The media-interactions provision requires coordination, not pre-approval, and the remainder of the challenged provisions simply impose after-the-fact consequences for improper speech pursuant to a trustee's official duties. Bylaws §§ 2.03(c), 2.04(c). Accordingly, Plaintiffs' prior-restraint argument is wrong even without *Garcetti*.

The content- and viewpoint-discrimination arguments are also unavailing. Under *Garcetti*, public entities can freely regulate the content of public servants' official speech because it "does not receive First Amendment protection." *Dougherty*, 772 F.3d at 987; *see also Garcetti*, 547 U.S. at 422 ("Official communications have official consequences, creating a need for substantive consistency and clarity."); *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009)

("[T]he government as employer is free to control the content of 'speech that owes its existence to a public employee's professional responsibilities.'" (quoting *Garcetti*, 547 U.S. at 421)); *Borowski v. Kean Univ.*, 2025 WL 1806643, at *2 (D.N.J. July 1, 2025) (rejecting a content- and viewpoint-discrimination argument because *Garcetti* applied), *appeal filed*, No. 25-2303 (3d Cir. July 11, 2025). After all, a public "entity has the right … to select the views that it wants to express," *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009), and when a public servant speaks pursuant to her official duties, "that kind of speech is—for constitutional purposes at least—the government's own speech," *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022).

The University's requirements for its trustees' official-capacity speech mirror similar rules around the country. *See, e.g.*, The Ohio State University Board of Trustees, *Resolution No. 2022-16: Statement of Expectations for The Ohio State University Board of Trustees* (adopted Aug. 19, 2021), https://trustees.osu.edu/sites/default/files/documents/2021/11/Full_Board_Public_Session_Materials_Nov21.pdf ("Board members should publicly support the University, the President, and decisions the Board and President reach, even when one holds views or cast votes to the contrary."); The University of Texas System Board of Regents, *Rule 10101: Board Authority and Duties* § 7 (amended Nov. 20, 2025), https://www.utsystem.edu/board-of-regents/rules/10101-board-authority-and-

duties ("Except in unusual circumstances, Regents are expected to coordinate media contacts with and to provide advance notice . . . regarding any media contacts and press statements."); The Association of Governing Boards of Universities and Colleges, *Models of Governance in Higher Education: AGB Principles vs. Ideologically Driven Initiatives* 2, https://agb.org/wp-content/uploads/2025/08/AGB-ModelsOfGovernance-Aug1Update.pdf ("Trustees function most effectively when they view themselves as part of a collective, cohesive body—encouraged to voice their own ideas and positions in board meetings but supportive of final board decisions.").

In short, *Garcetti* allows for substantial leeway in regulating official-capacity speech. The Code of Conduct falls well within the bounds of that rule.

### C. *Garcetti* applies to the trustees.

No exception to *Garcetti* saves Plaintiffs' claim.

**1.** It is an open question in this Circuit whether *Garcetti* applies to "elected officials to a political body" like a local government. *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 178 (3d Cir. 2015). This Court need not address that issue, however, because the trustees are not elected public officials.

Most trustees are not elected to the Board in any sense—the Board chooses eleven trustees, the Governor appoints six, and six more sit *ex officio*. *Supra* Background, Section A. Plaintiffs tacitly admit as much by focusing their argument

exclusively on "alumni trustees," PI Br. at 14, who are only 9 of the 38 trustees.[4] But because Plaintiffs do not claim that any active alumni trustees are willing speakers being restrained from speaking with them, they do not have standing to challenge any restriction on alumni trustees. Plaintiffs have standing only to seek relief regarding emeriti trustees, who are given the honorary title by the Board, not elected to emeritus status. Bylaws Elections Appendix § 9(1); *supra* Background, Section A. There is thus no question that *Garcetti* applies to them regardless of any "elected official" exception.

In any event, if it were somehow relevant here, alumni trustees are not elected public officials in the relevant sense. In every court that has held *Garcetti* does not apply to elected officials, the elected officials in question have been elected by the public to exercise sovereign power. *See, e.g.*, *Boquist v. Courtney*, 32 F.4th 764, 771 (9th Cir. 2022) (state senator); *Jenevein v. Willing*, 493 F.3d 551, 557 (5th Cir. 2007) (elected judge); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 542 (9th Cir. 2010) (a school-board member); *Croft v. Donegal Twp.*, 2021 WL 1146285, at *1 (W.D. Pa. Mar. 25, 2021) (member of a town board of supervisors).

---

[4] The small proportion of alumni trustees precludes any facial challenge. A theory that applies to less than a quarter of the trustees cannot establish that "a substantial number of [the Code of Conduct's] applications are unconstitutional, judged in relation to the [Code's] plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quotation marks omitted).

By contrast, alumni trustees are chosen by the University's alumni in a privately run process, not through a "general public election," and their duties "are not commensurate with the duties of elected public officials." *Benner v. Oswald*, 592 F.2d 174, 183 (3d Cir. 1979); *see also Benner v. Oswald*, 444 F. Supp. 545, 561 (M.D. Pa. 1978) (concluding that "no election is involved" in choosing Penn State trustees). Alumni trustees are thus not the kind of "elected officials to a political body" who might be exempt from *Garcetti*. *Werkheiser*, 780 F.3d at 178.

Moreover, true elected public officials owe their loyalty to the public that elected them, not the institution to which they are elected. *Oh v. Phila. Cnty. Bd. of Elections*, 2008 WL 2779006, at *3 (E.D. Pa. July 16, 2008) (an elected official "holds office for the benefit of his constituents" (cleaned up)); *Jenevein*, 493 F.3d at 557 (an elected judge's "'employer' [was] the public itself, at least in the practical sense"). Alumni trustees, by contrast, owe their loyalty "*solely* to the" University "and not to any member or creditor or any other person or group." 15 Pa. Stat. & Cons. Stat. § 5717 (emphasis added); *see also* Bylaws § 8.07 (trustees "must keep the welfare of the entire University, not just a particular constituency, at all times paramount").

In asserting that alumni trustees are nevertheless elected public officials, Plaintiffs cite only two cases. One simply raised the question whether a Penn State trustee is an elected official—the court reached no conclusion either way, and is still

considering that issue. *See Fenchak v. Pa. State Univ.*, 2026 WL 1045065, at *7 (E.D. Pa. Apr. 17, 2026).[5] The other involved an official elected by the general public to exercise government power. *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1245-47 (10th Cir. 2000); *see also* Wyo. Stat. Ann. § 21-18-308. As *Benner* explained, Penn State alumni trustees do not share those characteristics. That is why earlier cases involving a local school board and the trustees of a "junior college district" did not apply to the Board—those cases "involve[d] general government elections." 592 F.2d at 182-83. And the Board, unlike the publicly elected entity in *Phelan*, "does not possess the minimum governmental powers associated with municipal, school district, county, state, or federal offices." *Id.* at 183. So its members are not elected public officials. Instead, they are more like the volunteer fire-company chief in *Jerri v. Harran*, who was subject to *Garcetti* even though he was elected by the company's membership. 625 F. App'x 574, 577-79 (3d Cir. 2015).

**2.** It also makes no difference that trustees are volunteers rather than employees. The Third Circuit has assumed that "the opportunity to serve as a volunteer constitutes the type of governmental benefit or privilege the deprivation of which can trigger First Amendment scrutiny." *Versarge v. Twp. of Clinton*, 984

[5] The parties have now briefed that question and await a decision. *See* Dkt. Nos. 19-22, *Fenchak v. Pa. State Univ.*, No. 25-CV-6313-KSM (E.D. Pa.).

F.2d 1359, 1364 (3d Cir. 1993) (quoting *Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992)). But a volunteer's interest in her public role is no greater than an employee's, so the *Pickering* framework—which includes *Garcetti*—applies to them. *Id.*; *see also Jerri*, 625 F. App'x at 579; *Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 726 (D.N.J. 2013) (applying *Garcetti* to reject a volunteer's First Amendment claims), *aff'd*, 559 F. App'x 139 (3d Cir. 2014); *Foote v. Town of Bedford*, 642 F.3d 80, 85 (1st Cir. 2011) ("[T]he government's interest in ensuring that its policymakers sing from the same sheet music applies equally to … unpaid advisors.").

## III. Plaintiffs' Delay Precludes Preliminary Injunctive Relief.

Even setting aside all of the above, the Court should also deny preliminary relief because of Plaintiffs' lengthy delay in challenging the Bylaws. Injunctive relief "is never automatic" and "always involves a district court's sound discretion." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 197, 204 (3d Cir. 2024). Plaintiffs claim that the Board made amendments "[i]n July 2024" that "effectively eliminated trustees' freedom to communicate with Plaintiffs." Compl. ¶ 5. Yet they waited almost two years before filing this lawsuit on May 27, 2026.

"A classic maxim of equity is that it assists the diligent, not the tardy." *Del. State Sportsmen's Ass'n*, 108 F.4th at 206 (quotation marks omitted). Delay "tends

to indicate at least a reduced need for … drastic, speedy action." *Id.* (cleaned up). The almost-two-year delay here—in addition to the lack of any remaining live restriction—makes clear that there is no need at all.

## CONCLUSION

For the reasons above, Plaintiffs have not shown any entitlement to preliminary injunctive relief, let alone the "clear showing" that such "an extraordinary and drastic remedy" requires. *Del. State Sportsmen's Ass'n*, 108 F.4th at 202 (cleaned up). Their motion should be denied.

Dated: July 21, 2026

Respectfully submitted,

*/s/ Andrew R. Stanton*

Andrew R. Stanton (Pa. #93409)
Susan E. Kessler (Pa. #322558)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
skessler@jonesday.com

Anthony J. Dick
(*pro hac vice* pending)
Anthony J. Jeffries
(*pro hac vice* pending)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
ajdick@jonesday.com
ajjeffries@jonesday.com

*Counsel for Defendants, David Kleppinger, Daniel Onorato, and Richard Sokolov*

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction contains 4,999 words, as calculated by the word-count feature of Microsoft Word, in compliance with the limits of Local Rule 7.8(b)(2).

Dated: July 21, 2026

*Andrew R. Stanton*

Andrew R. Stanton