**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CENTRE DAILY TIMES,<br>SPOTLIGHT PA, and<br>STATECOLLEGE.COM,<br>Plaintiffs,<br>v.<br><br>DAVID KLEPPINGER,<br>DANIEL ONORATO, and<br>RICHARD SOKOLOV,<br>*in their official capacities*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 4:26-cv-01442<br>Chief Judge Matthew W. Brann |

**SUPPLEMENTAL DECLARATION OF ALICE POPE**

I, Alice Pope, declare as follows:

1. I am an emeritus member of the Board of Trustees ("the Board") of Pennsylvania State University. I submit this declaration based on my personal knowledge.

2. On July 17, 2026, the Board amended its Bylaws (the "July 2026 Amendments") after the commencement of this action. I have reviewed the July 2026 Amendments and Shannon Harvey's Declaration, dated July 20, 2026. Dkt. Nos. 24-2, 24-3 and 24-4. I understand that the July 2026 Amendments remove language in the Bylaws that explicitly required emeriti trustees to adhere to the trustee Code of Conduct. Dkt. No. 24-4 (Section 2.03(a); Elections App'x § 9). Ms.

Harvey's Declaration explained that, according to the Chair of the Governance Committee Dan Onorato, the changes reflected, "among other things, 'conforming changes to bring the Bylaws in line with our new approach to emeriti trustees.'"

3. I was not consulted as an emerita trustee regarding the July 2026 Amendments, nor were these changes even communicated to me as an emerita trustee prior to or following their adoption.

4. I understand the Board's "new approach to emeriti trustees" to refer to changes implemented by Board leadership since the November 2025 Bylaws amendments took effect that have resulted in emeriti trustees now playing effectively no role in Board deliberations or governance.

5. The November 2025 Bylaws amendments, among other things, removed a provision stating that "[i]ndividuals with the status of Trustee *Emeritus* shall be invited to attend public meetings of the Board of Trustees and Standing Committees thereof and may participate at the discretion of the presiding officer of such meeting." Compare Compl. Ex. 2, Elections App'x § 9 with Compl. Ex. 1, Elections Appx. § 9. Prior to this amendment and the July 2026 Board meeting, I was invited to attend public meetings of the Board of Trustees and Standing Committees along with other emeriti trustees. We had the opportunity to ask questions and engage in discussions at public meetings of the Board and Standing Committees.

6. The Board implemented these changes to the role of emeritus trustees in November 2025 and July 2026 shortly after I received a letter of reprimand for expressing my personal views to the press about the campus closures in May 2025 and after I came forward as a declarant in this lawsuit in May 2026. The timing of these changes strongly indicates to me that they were made in an effort to curtail my involvement in Board deliberations and Board governance and in a transparent attempt to avoid this Court's scrutiny of the challenged Bylaws provisions.

7. The July 2026 Amendments give me no comfort that I can now express my personal views about matters of great public concern to Penn State University alumni and other stakeholders without fear of repercussions. To the contrary, I feel more constrained now than I did prior to the July 2026 Amendments. The Board's pattern of curtailing my participation in Board governance in response to me expressing views contrary to Board leadership demonstrates to me that there is nothing stopping the Board from amending the Bylaws in the future again to further target my speech.

8. I also remain concerned by the restrictions on trustee speech because I have eligibility remaining for one more three-year term on the Board, and I have considered running again to represent alumni whose voices in my view are not adequately represented on the Board. But the Bylaws require that all candidates subject themselves to "a review of candidate's social media and online presence to

ensure that there is no conduct inconsistent with the Code of Conduct and/or Penn State Values" and submit their "Record of Service . . . including disclosure of any warnings, reprimands, or letters of censure received while serving on the Board." Dkt. No. 24-3 (Elections App'x § 2). And they further require that I sign a certification as a candidate saying that I "will adhere to the Code of Conduct both as a Trustee candidate and a Trustee." *Id.*

9. In addition to writing op-eds and providing statements to the press, I have used my social media presence to speak out about matters of public concern involving Penn State, including the campus closures, and have been reprimanded by Board leadership for my speech. Consequently, I believe that the eligibility criteria for Board candidates effectively foreclose me from running for the Board.

10. Even if the Board allowed me to run again, the restrictions in the trustee Code of Conduct would make it exceedingly difficult for me to run an honest campaign. The Bylaws mandate that candidates "support majority decisions of the Board" and run all media interactions by the Board Office in advance. They also require that candidates "respect guidance" from the Board Office and the Office of Strategic Communications regarding any communications with the press and prohibit them from making "[n]egative or critical public statements" when speaking "pursuant to their official responsibilities." But as a candidate, I would feel it is important for me to explain my voting history to alumni and express any dissenting

views I hold from the current Board leadership, just as I have done the four previous times I stood for election to the Board.

11. While the July 2026 Amendments state repeatedly that various speech restrictions only apply when “done in a Trustee capacity” or “when speaking pursuant to their official responsibilities,” no one has explained to me what this language means and what particular activities it proscribes. Indeed, I was reprimanded for speaking out about the campus closures, even though I was expressing my personal views and not the views of the Board as a whole. Based on prior Board actions against me and other trustees who dissented from Board leadership’s views, I believe that this language is intended to prohibit the expression of any negative or critical views about any Penn State stakeholder whatsoever, even when done in a trustee’s personal capacity as a citizen.

12. I believe other current and former Board members similarly have been and continue to be chilled by these changes to the Bylaws. In particular, Jay Paterno is a current trustee who participated in the May 2025 press conference with me, and I have spoken to him about feeling constrained by the Code of Conduct’s restrictions on speech.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: 8/11/26

Alice Pope

Alice Pope

Trustee Emerita,
Pennsylvania State University