**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CENTRE DAILY TIMES, SPOTLIGHT PA, and STATECOLLEGE.COM,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID KLEPPINGER, DANIEL ONORATO, and RICHARD SOKOLOV, *in their official capacities*,<br><br>Defendants. | Civil Action No. 4:26-cv-01442-MWB<br><br>(Chief Judge Matthew W. Brann) |

# DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Andrew R. Stanton (Pa. #93409)
Susan E. Kessler (Pa. #322558)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
skessler@jonesday.com

Anthony J. Dick (admitted *pro hac vice*)
Anthony J. Jeffries (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
ajdick@jonesday.com
ajjeffries@jonesday.com

*Counsel for Defendants David Kleppinger, Daniel Onorato, and Richard Sokolov*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................1

ARGUMENT ........................................................................................1

I. Plaintiffs Fail to Resuscitate Their Moot Motion. ..........................................1

A. There is no willing speaker whose speech is being restricted. ...................2

B. The voluntary cessation exception to mootness does not apply. ..............10

II. Plaintiffs Are Not Likely to Succeed on the Merits......................................14

A. The Amended Bylaws only apply to official-capacity speech. ................14

B. *Garcetti v. Ceballos* applies. ........................................................16

III. The Balance of Equities is Against Plaintiffs. ..............................................19

CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ..................................................................................11

*Alvarez v. Smith*,
558 U.S. 87 (2009) ..................................................................................11

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*,
39 F.4th 95 (3d Cir. 2022) ...................................................................18, 19

*Ammond v. McGahn*,
532 F.2d 325 (3d Cir. 1976) ..................................................................10, 13

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) ..................................................................................15

*Benner v. Oswald*,
592 F.2d 174 (3d Cir. 1979) ..................................................................16, 17

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) ..................................................................................18

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..................................................................................2

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
108 F.4th 194 (3d Cir. 2024) ..................................................................20

*Diamond v. Pa. State Educ. Ass'n*,
399 F. Supp. 3d 361 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020) ..................................................................................11

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*,
2021 WL 1945699 (M.D. Pa. May 18, 2021)....................................................6

*Fenchak v. Pa. State Univ.*,
2026 WL 2210062 (E.D. Pa. July 31, 2026) ........................................14, 16, 17

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)..........................................................................passim

*Greenberg v. Lehocky*,
81 F.4th 376 (3d Cir. 2023) ...........................................................................2, 3

*Iron Arrow Honor Soc'y v. Heckler*,
464 U.S. 67 (1983)............................................................................................13

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022)..........................................................................................18

*Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*,
237 F.3d 186 (3d Cir. 2001) .............................................................................13

*Lewis v. Casey*,
518 U.S. 343 (1996)............................................................................................4

*Long v. United Rentals (N. Am., Inc.*),
2026 WL 1822276 (E.D. Pa. June 24, 2026)........................................................5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................................4

*Marcavage v. Nat'l Park Serv.*,
666 F.3d 856 (3d Cir. 2012) ..............................................................................11

*Milwaukee Deputy Sheriff's Ass'n v. Clarke*,
574 F.3d 370 (7th Cir. 2009) .............................................................................16

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)..........................................................................................15

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................................................................................5

*Pa. Fam. Inst., Inc. v. Black*,
489 F.3d 156 (3d Cir. 2007) ...............................................................passim

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009)..................................................................................18

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992)..................................................................................18

*Reynolds v. Wagner*,
128 F.3d 166 (3d Cir. 1997) ........................................................................5

*Road-Con, Inc. v. City of Philadelphia*,
120 F.4th 346 (3d Cir. 2024) .....................................................................13

*United States v. Government of Virgin Islands*,
363 F.3d 276 (3d Cir. 2004) ......................................................................13

*United States v. Nat'l Treasury Emps. Union*,
513 U.S. 454 (1995)..................................................................................19

**OTHER AUTHORITIES**

Jay Paterno, *Paterno: Ending WPSU Will Silence Important Voices* (Sept. 18, 2025, 5:00 A.M.), https://www.statecollege.com/articles/columns/paterno-ending-wpsu-will-silence-important-voices-and-connections/ ...........................................................................................7

Jay Paterno, *Penn State: What Have We Become and What Will We Be?* (Oct. 16, 2025, 12:01 A.M.), https://www.statecollege.com/articles/opinion/penn-state-what-have-we-become-and-what-will-we-be/...................................................................................................7

## INTRODUCTION

The Court should reject Plaintiffs' last-ditch efforts to keep alive their moot and meritless motion. Their right-to-listen claim does not present any live controversy because they cannot identify a single willing speaker who actually wants to speak with them but is currently being prevented from doing so by the University's policies. Much less can they show the type of urgent need for judicial relief that would justify a preliminary injunction. That by itself is enough to deny the relief requested in Plaintiffs' motion, but it only gets worse for them on the merits. The Amended Bylaws plainly comply with the standards articulated in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), because they restrict nothing more than the official-capacity speech of public servants. Under *Garcetti*, the First Amendment allows the University to regulate what its trustees say when speaking in their official capacities. *See id.* at 421. And under the University's current Bylaws, nothing more is at stake.

## ARGUMENT

### I. Plaintiffs Fail to Resuscitate Their Moot Motion.

It is well established that a right-to-listen claim depends on "the existence of a 'willing speaker,'" and is therefore "'entirely derivative' of the rights of the speaker." *Pa. Fam. Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007) (citations omitted). In their motion, Plaintiffs identified only two willing speakers whose

speech they claimed was being restricted by the University's Bylaws: Dr. Alice Pope and Anthony Lubrano. But as the University explained in its opposition brief, Dr. Pope is an emeritus trustee and is thus not subject to any speech restrictions at all under the Amended Bylaws. And since Mr. Lubrano's board service has now ended, he too falls outside the reach of any potential Bylaw restriction on trustee speech. That means Plaintiffs' request for an injunction is moot, as they can no longer point to any willing speaker (if they ever could) who is subject to a speech restriction.

**A. There is no willing speaker whose speech is being restricted.**

Plaintiffs' reply brief offers four new attempts to explain how the University's Amended Bylaws allegedly are still restricting the speech of some willing speaker, as would be required to create a live controversy. But all of these efforts fail.

**1.** Plaintiffs first suggest that a live controversy remains because Dr. Pope "continues to feel chilled," even though the Amended Bylaws no longer apply to emeritus trustees like her. Reply at 3. This argument fails because "allegations of a 'subjective chill'" are not enough; any alleged chilling effect must be "objectively reasonable and fairly traceable to the challenged regulation." *Greenberg v. Lehocky*, 81 F.4th 376, 388 (3d Cir. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013)). There is "no credible risk" that the Amended Bylaws will be applied to Dr. Pope, *id.*, because the recent amendments make clear that the Code of

Conduct does not apply to emeriti trustees at all, *see* ECF No. 24-1 (Harvey Decl.) ¶¶ 4–7. Even if Dr. Pope "feels uncomfortable speaking freely," that does not confer standing because her subjective discomfort has no objectively reasonable connection to the Amended Bylaws as they now stand. *Greenberg*, 81 F.4th at 389.

It makes no difference that Dr. Pope now claims in her supplemental declaration that she might possibly run for a third Board term at some unspecified point in the future. Again, any chill must be "objectively reasonable and fairly traceable to the challenged regulation," *id.* at 388, and there is no theoretical way to apply the challenged provisions of the Bylaws to Dr. Pope, even if she were to run for a third term, because they facially cannot apply to anyone who is not currently an active trustee. Section 2.03(c) requires trustees to "support majority decisions of the Board" only when "speaking pursuant to their official responsibilities," and proscribes "[n]egative or critical public statements" only when "made by Trustees pursuant to their official responsibilities." ECF No. 24-3 (Bylaws) § 2.03(c). Likewise, Section 2.04(c) requires coordination of media and press interactions "done in a Trustee capacity relating to matters that have come before the Board." *Id.* § 2.04(c). A trustee candidate cannot speak pursuant to "official" trustee responsibilities or "in a Trustee capacity," so these provisions could not possibly apply to Dr. Pope unless and until she becomes an active Board member.

In any event, Dr. Pope's possible electoral ambitions are entirely speculative and insufficiently concrete to support standing. She merely declares that she "ha[s] considered" running without providing any further detail. ECF No. 31-2 (Pope Suppl. Decl.) ¶ 8. But "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

Even if Dr. Pope had standing to challenge the elections provisions (she does not), that would not provide standing to challenge the provisions at issue in this case, which apply only to active trustees. After all, injunctive relief must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). As the Supreme Court has explained, "[t]he actual-injury requirement would hardly serve the purpose . . . of preventing courts from undertaking tasks assigned to the political branches . . . if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration." *Id.* Here, that means any injury Dr. Pope claims to suffer from the Elections Appendix still would not justify an injunction against *other* Bylaw provisions, which are entirely separate and do not apply to Dr. Pope.

For these reasons, there can be no live claim based on the supposed chilling of Dr. Pope's speech.

**2.** Plaintiffs next argue in conclusory fashion that the "chill on [Anthony Lubrano's] speech injured Plaintiffs." Reply at 5. But Mr. Lubrano's Board service ended on June 30, 2026, Compl. ¶ 58, and past injury cannot justify "forward-looking relief," *Murthy v. Missouri*, 603 U.S. 43, 59 (2024). Nor do Plaintiffs develop any argument as to how Mr. Lubrano's email to a StateCollege.com reporter, *see* ECF No. 15-7 (Rushton Exs.) at 32, furnishes "evidence that other alumni-elected trustees would also be willing speakers but for the Gag Policy," Reply at 5; *see Long v. United Rentals (N. Am., Inc.*), 2026 WL 1822276, at *8 (E.D. Pa. June 24, 2026) ("[A]n argument consisting of no more than a conclusory assertion such as the one made here ... will be deemed waived." (quoting *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997))).

To be sure, right-to-listen plaintiffs do not necessarily need to "submit a declaration" from willing speakers. Reply at 6. But as the Third Circuit has made clear, they do need to prove that there is "someone who is willing to state that his rights were infringed upon, or that his exercise of rights was chilled by" the challenged provision who would otherwise speak to them. *Pa. Fam. Inst.*, 489 F.3d at 166. And here, Plaintiffs have simply failed to identify any relevant willing

speaker who claims his or her speech is being restricted by any rule or policy they challenge.

**3.** Plaintiffs next attempt to belatedly identify a new willing speaker by introducing current trustee Jay Paterno, who was not identified in the Complaint or motion for preliminary injunction despite being affiliated with one of the Plaintiff organizations. *See* Reply at 5 & n.2. But a reply brief is not the place to "newly raise[]" arguments. *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 2021 WL 1945699, at *6–7 (M.D. Pa. May 18, 2021). Since the motion for preliminary injunction that is now before the Court is not based on the need to lift any supposed restriction on Mr. Paterno, the Court can disregard this argument on that ground alone.

In any event, Mr. Paterno cannot help Plaintiffs because they have failed to show that he would speak more freely with them "but for" the Bylaws. *Pa. Fam. Inst.*, 489 F.3d at 167. They have "not offered one affirmative, self-generated statement" from Mr. Paterno that he speaks with Plaintiffs less because of the Bylaws. *Id.* at 168. To the contrary, as Plaintiffs themselves demonstrate, Mr. Paterno appears to be speaking quite freely. They emphasize that he "testified 'voluntarily'" in a lawsuit against the University on June 30, 2026, even after the subpoena against him had been quashed. *See* ECF No. 31-1 (Hr'g Tr.) at 64:7–11. That hardly shows a reluctance to make public statements. Mr. Paterno's

publications as a "regular columnist for [Plaintiff] StateCollege.com," Reply at 5, further demonstrate that he has not been shy about sharing his views on the University or the Board. *See* Jay Paterno, *Penn State: What Have We Become and What Will We Be?*, StateCollege.com (Oct. 16, 2025, 12:01 A.M.), https://www.statecollege.com/articles/opinion/penn-state-what-have-we-become-and-what-will-we-be/ ("For years we looked at how dysfunctional those places were. Massive buyouts were for other schools. Well, it's all happening here now."); Jay Paterno, *Paterno: Ending WPSU Will Silence Important Voices*, StateCollege.com (Sept. 18, 2025, 5:00 A.M.), https://www.statecollege.com/articles/columns/paterno-ending-wpsu-will-silence-important-voices-and-connections/ (reporting that the Finance and Investment Committee of the Board "unanimously decided to kill the proposal" that could save local media entity WPSU, that "it seems impossible to believe we cannot (or won't) provide resources to ensure an informed public," and that it was a day "that would eventually silence important voices and connections").

The conclusory assertion that Mr. Paterno subjectively feels "chilled"—with no corroborating evidence—is legally insufficient and lacks any credibility given his extensive public statements. In light of Mr. Paterno's continued willingness to publish critical articles for one of the Plaintiffs and to testify voluntarily in open court even after the challenged Bylaws provisions were adopted, *and* his alleged

receipt of a letter regarding his participation in the May 2025 press conference, Plaintiffs appear to be fully enjoying their right to listen to Mr. Paterno. They therefore cannot rely on him to show that "but for" the Bylaws, "a speaker subject to [them] would be willing to speak." *Pa. Fam. Inst.*, 489 F.3d at 167.

**4.** Finally, declarations from reporters at the Plaintiff organizations cannot create standing, or the willing-speaker requirement would be meaningless. Plaintiffs seeking to invoke the right-to-listen theory must show that "but for a regulation, a speaker subject to it would be willing to speak." *Id.* That requires proof of a causal connection between any silence and the challenged regulation. *Id.* Thus, in *Pennsylvania Family Institute*, the Third Circuit found conclusive the plaintiff's inability to offer even "one affirmative, self-generated statement from any sitting judge or candidate," despite the plaintiff's insistence that it was having trouble obtaining statements from sitting judges and candidates. *Id.* at 168. The same absence is equally conclusive here.

Moreover, the declarations affirmatively *undermine* Plaintiffs' standing theory. Reporters at the Centre Daily Times and StateCollege.com apparently struggled to obtain statements from trustees long before the first challenged provision was enacted in July 2024. *See* ECF No. 15-2 (McAllister Decl.) ¶¶ 1, 8 (stating that McAllister has been in her position at the Centre Daily Times "since 2019" and that "[d]uring [McAllister's] time at the Centre Daily Times, reporters

have rarely been able to get comment or information from members of the Penn State Board of Trustees"); ECF No. 15-6 (Rushton Decl.) ¶¶ 5, 10 (stating that Rushton has been with StateCollege.com for "10 years" and is "usually unable to speak with trustees in the course of my reporting"). And the declarant from Spotlight PA has not even declared difficulty in obtaining comments from trustees at all. *See* ECF No. 15-4 (Rafacz Decl.) ¶ 9. That Plaintiffs had difficulty obtaining statements well before the challenged Bylaws provisions took effect shows that, as in *Pennsylvania Family Institute*, no one would speak more freely with Plaintiffs even if the Bylaws were enjoined. 489 F.3d at 169.

To sum up, Plaintiffs cannot show a live controversy. The Amended Bylaws have mooted any claim predicated on Dr. Pope's speech rights, and her future plans to run for a third Board term do not create standing. Mr. Lubrano, as a former trustee, is similarly not subject to the challenged provisions. Plaintiffs cannot swap in Mr. Paterno as a last-minute "willing speaker" because he is not mentioned in their Complaint or motion for preliminary injunction, and in any event they have not shown that the Amended Bylaws have objectively chilled his speech in any way. And the speculative declarations from Plaintiffs' own reporters cannot demonstrate a willing speaker in the absence of any other reason to believe that one exists. There is thus no live controversy that would support the grant of a preliminary injunction here.

**B. The voluntary cessation exception to mootness does not apply.**

Perhaps recognizing that their claims are moot because no willing speaker is subject to any speech restriction under the Amended Bylaws, Plaintiffs seek to invoke the voluntary-cessation exception to mootness. But this exception does not apply because there is no reason to think the University will re-impose any alleged restriction on emeritus trustees like Dr. Pope, who is the only willing speaker left in the case. And regardless, even if voluntary cessation could save the *case* from being moot, it still could not justify a preliminary injunction due to the lack of any urgency.

First, as the Third Circuit has made clear, there is no reason to enter a preliminary injunction when a plaintiff is challenging a policy that the defendant has rescinded. After all, a preliminary injunction is justified only in urgent cases, where "the alleged injury is imminent" and "would be irreparable." *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976). But if the challenged policy has been rescinded, then there can be no threat of "imminent" harm at all. Even if the plaintiff could theoretically rely on the voluntary-cessation doctrine to avoid dismissal of the entire case as moot, the lack of any active policy would still show that there is no "imminent" and "irreparable" harm of the type needed to justify emergency preliminary relief. *Id.*

Second, Plaintiffs' voluntary-cessation argument separately fails because they have not shown some reason to "expect" that the now-repealed restrictions they

challenge on emeritus trustees "will recur." *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 861 (3d Cir. 2012). "The voluntary-cessation exception to the mootness doctrine exists so that a defendant cannot 'engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *Diamond v. Pa. State Educ. Ass'n*, 399 F. Supp. 3d 361, 391 (W.D. Pa. 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)), *aff'd*, 972 F.3d 262 (3d Cir. 2020). But this doctrine is sharply limited as applied to government defendants, because "government officials are presumed to act in good faith." *Marcavage*, 666 F.3d at 861 (cleaned up). As a result, a plaintiff seeking to maintain a challenge to a policy that has since been repealed must provide some affirmative reason to think that the policy might be strategically reinstituted after the case is dismissed as moot. *Id*.

Here, however, Plaintiffs cannot point to any such affirmative reason to think that the pre-Amended Bylaws will ever be restored. They point only to the timing of the Bylaw amendments, but otherwise they offer nothing to overcome the presumption of good faith afforded to the Board's actions. They also assert that Defendants must concede that the prior Bylaws were unconstitutional for their claim to be moot. Reply at 7. But the Supreme Court has made clear that a case can be moot even where the parties "continue[d] to dispute the lawfulness" of the challenged actions. *Alvarez v. Smith*, 558 U.S. 87, 93 (2009). The only question is

whether there is a reason to think the allegedly unconstitutional conduct will resume. Here, Plaintiffs offer none.

Third, Plaintiffs also do not explain how the *Defendants* could resume the allegedly unconstitutional conduct in question, i.e., revert to the old Bylaws. Defendants—three members of a 38-member board that operates by majority rule—had no power to unilaterally amend the Bylaws, and they have no power to unilaterally revert to the old version. *See* Bylaws §§ 2.09 & 2.10. Amendments to the Bylaws must first be referred to the Governance Committee of the Board "for initial review and consideration." *Id.* § 3.03(a); *see also id.* § 3.03(e)(2) (Governance Committee "shall consider and report" on "Bylaws updates"). Once proposed amendments are ready for Board consideration, they may be considered only at a "regular or special meeting" of the Board, *id.* § 9.01, with the attendance of "at least a majority of the voting members of the Board" to constitute a quorum, *id.* § 2.09. Even once a quorum is present, amendments are only adopted upon "the affirmative vote of a majority of the Trustees present." *Id.* § 2.10. It is impossible for three Board members to complete this process on their own. The Complaint recognizes that reality, alleging that the Board "adopt[s] amendments" to the Bylaws while the individual Defendants merely "enforce" them. Compl. ¶¶ 5 & 10. Moreover, in light of those requirements, Plaintiffs have no possible argument that

any injury is "imminent" for purposes of a preliminary injunction inquiry. *Ammond*, 532 F.2d at 329.

Because the individual Defendants cannot revive the old Bylaws, this is "not the typical case where it could be argued that the [defendant] has taken its position only in order to escape the threat of an injunction." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72 (1983). The voluntary-cessation exception does not apply. *Cf. Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001) ("[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" (citation omitted)).

Neither *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 357 (3d Cir. 2024), where the City of Philadelphia simply stopped using a template contract containing the challenged provisions, nor *United States v. Government of Virgin Islands*, 363 F.3d 276, 284 (3d Cir. 2004), where the Government of the Virgin Islands merely cancelled the challenged contract, is relevant here. In both cases, the defendants were solely responsible for the challenged action's cessation and possible resumption. Here, by contrast, because the Defendants have no ability to undo the amendments on their own, the voluntary-cessation exception does not apply.

For each of those reasons, the voluntary-cessation exception cannot revive Plaintiffs' preliminary-injunction motion.

## II. Plaintiffs Are Not Likely to Succeed on the Merits.

Even if they had a live claim, Plaintiffs' arguments on the merits also fall short. The Amended Bylaws, by their plain text, apply only to official-capacity speech that may be regulated under *Garcetti*. As the Eastern District of Pennsylvania correctly held, *Garcetti* therefore governs the analysis of the University's restrictions on trustee speech. *See Fenchak v. Pa. State Univ.*, 2026 WL 2210062, at *6 (E.D. Pa. July 31, 2026). Plaintiffs cannot circumvent *Garcetti* by drawing on inapposite caselaw that does not involve the official-capacity speech of public servants.

### A. The Amended Bylaws only apply to official-capacity speech.

Plaintiffs initially misread the Code of Conduct as sweeping more broadly than it does and now attack a strawman. The Board's amendments to the Bylaws make inescapable that the Code of Conduct applies only to official-duty speech. On its face, the Amended Bylaws apply only to Trustee speech "pursuant to their official responsibilities," Bylaws § 2.03(c), or "in a Trustee capacity," *id.* § 2.04(c). This perfectly tracks *Garcetti*, which held that "when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421 (emphasis added).

To the extent Plaintiffs worry about how the Amended Bylaws will be applied in the future, the proper way to address that is through a future as-applied challenge,

not through the current facial challenge. A facial analysis begins with assessing the "scope" of the challenged provision, such as determining "[w]hat activities, by what actors, . . . the laws prohibit or otherwise regulate[.]" *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). Based on that analysis of the challenged provision's text, Plaintiffs must show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 723 (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). Here, the Amended Bylaws apply to Trustee speech made "pursuant to their official responsibilities," Bylaws § 2.03(c), and to "media and press interactions done in a Trustee capacity," *id.* § 2.04(c). The next step is to ask "which of the laws' applications violate the First Amendment, and to measure them against the rest." *Moody*, 603 U.S. at 725. Since *Garcetti* applies, as discussed further below, and the Bylaws embrace the same standard provided by *Garcetti*, Plaintiffs have not shown that the Bylaws have any unconstitutional applications on their face, let alone that unconstitutional applications outweigh their "plainly legitimate sweep." *Id.* at 723.

Because Plaintiffs chose to bring a pre-enforcement facial challenge, most of their arguments about the scope of trustees' official responsibilities are irrelevant. The Board has not, for example, "creat[ed] excessively broad job descriptions." Reply at 9 (quotation marks omitted). It has simply said that, for speech that is within trustees' official responsibilities, the Code of Conduct applies. That is

precisely what *Garcetti* permits. 547 U.S. at 421; *see also Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 383 (7th Cir. 2009).

**B. *Garcetti v. Ceballos* applies.**

Since the Amended Bylaws apply to official-capacity speech, *Garcetti* governs the analysis. *See Fenchak*, 2026 WL 2210062, at *6. Plaintiffs offer no reason to depart from the Eastern District of Pennsylvania's cogent reasoning in *Fenchak*, and the fact that the Amended Bylaws apply only to trustee speech made in a trustee capacity forecloses their remaining arguments.

**1.** The Court should not take up Plaintiffs' request to create an ill-defined new exception to *Garcetti* for public university trustees who are admittedly not "full-fledged elected officials." Reply at 16.

In the recent decision in *Fenchak*, the court correctly held that University trustees "are not elected public officials for First Amendment purposes," and thus "are properly viewed as University employees, whose speech may be restricted when necessary for the University to 'operate efficiently and effectively.'" *Fenchak*, 2026 WL 2210062, at *6 (quoting *Garcetti*, 547 U.S. at 419). In rejecting the line of authorities creating an exception for elected officials, the court explained that the elected University trustees "were not elected by a district at large or as part of a general election." *Id.* at *5. Drawing on the Third Circuit's conclusion in *Benner v. Oswald*, the court reasoned that "PSU trustees have duties that are 'not

commensurate with the duties of elected public officials.'" *Id.* (quoting *Benner v. Oswald*, 592 F.2d 174, 183 (3d Cir. 1979)). Indeed, trustees are subject to oversight and discipline under the Bylaws, the relevant provisions of which "read far more like terms of employment than they do an oath of public office." *Id.* at *6. So *Garcetti* governs and permits the University to regulate trustee speech made in a trustee capacity.

Plaintiffs refuse to recognize that *Garcetti*'s rationale applies equally to the University's trustees as it does to any government employee: Without the ability to discipline improper speech in a trustee capacity, "there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418. That is doubly so where only a portion of the University's 38-member Board is elected in any sense of the word, a reality that Plaintiffs acknowledge but refuse to meaningfully address. *See* Reply at 15 n.5. The elected-official caselaw upon which Plaintiffs rely—which involve true, publicly elected officials—simply does not apply. *See id.* at 18–19. There is no reason to depart from the Eastern District's persuasive reasoning and create discord in the University's governance by exempting some trustees from proper oversight.

**2.** Because the University may properly regulate the speech of its public servants made "pursuant to their official duties," *Garcetti*, 547 U.S. at 421, Plaintiffs' remaining arguments fail.

First, Plaintiffs fail to meaningfully respond to the Supreme Court's explanation that when a public servant speaks "'pursuant to [his or her] official duties,' . . . the Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022) (quoting *Garcetti*, 547 U.S. at 421). Like any speaker, the government has the right to choose its viewpoint when it speaks—and when public servants speak for it. *Garcetti*, 547 U.S. at 418 (explaining that employees have "no First Amendment cause of action based on his or her employer's reaction to the speech" when not speaking as a citizen on a matter of public concern); *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009) (explaining that the government "has the right to 'speak for itself'" including "to select the views that it wants to express").

For that reason, the occasional application of strict scrutiny to viewpoint-based regulations of "fraud, defamation, and 'fighting words'" has no bearing on the government's ability to regulate public servants' official-capacity speech. *Chiles v. Salazar*, 146 S. Ct. 1010, 1021 (2026); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 392, 395–96 (1992) (applying strict scrutiny to city ordinance prescribing certain "fighting words" based on viewpoint). The Third Circuit has not held otherwise—*Amalgamated Transit Union*'s discussion of viewpoint

discrimination came only *after* it had confirmed that the plaintiffs there had cleared the "threshold requirement[]" that they "speak 'as citizens' rather than 'pursuant to their official duties.'" *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022) (quoting *Garcetti*, 547 U.S. at 421). That makes sense. Under Plaintiffs' rule, a Governor could not fire her press secretary for stepping up to the podium and denigrating her policies. *Garcetti* precludes that untenable result.

Second, *Pickering* balancing—and therefore *National Treasury Employees Union*'s application of *Pickering* balancing—occurs only after establishing that public servants were speaking as citizens, which Plaintiffs cannot do. *See Amalgamated Transit Union*, 39 F.4th at 103 (citizen-capacity speech is among the "threshold requirements . . . for interest balancing"). Indeed, in *National Treasury Employees Union*, the court specified that the government employees "[sought] compensation for their expressive activities in their capacity as citizens, not as Government employees." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995). Unsurprisingly, those authorities do not alter *Garcetti*'s rule for official-capacity speech.

## III. The Balance of Equities is Against Plaintiffs.

Plaintiffs do not meaningfully dispute that they showed no urgency in bringing this case. They quibble only with the length of their delay, saying that their

claims are based on "changes made in November 2025" and "evidence of a chilling effect among trustees following the May 2025 press conference." Reply at 19. Whether Plaintiffs delayed two years, one year, or six months, the point remains: equity "assists the diligent, not the tardy." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 206 (3d Cir. 2024) (cleaned up). Plaintiffs' delay provides ample reason to deny extraordinary relief and let this case proceed in the ordinary course.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: September 3, 2026

Respectfully submitted,

*/s/ Andrew R. Stanton*

Andrew R. Stanton (Pa. #93409)
Susan E. Kessler (Pa. #322558)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
skessler@jonesday.com

Anthony J. Dick
(admitted *pro hac vice*)
Anthony J. Jeffries
(admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
ajdick@jonesday.com
ajjeffries@jonesday.com

*Counsel for Defendants*
*David Kleppinger, Daniel Onorato, and*
*Richard Sokolov*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing Defendants' Sur-Reply in Opposition to Plaintiffs' Motion for Preliminary Injunction contains 4,638 words, as calculated by the word-count feature of Microsoft Word, in compliance with the limits of Local Rule 7.8(b)(2).

Dated: September 3, 2026

*/s/ Andrew R. Stanton*
Andrew R. Stanton