**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CENTRE DAILY TIMES,
SPOTLIGHT PA, and
STATECOLLEGE.COM,

Plaintiffs,

v.

DAVID KLEPPINGER, DANIEL ONORATO, and RICHARD SOKOLOV, *in their official capacities*,

Defendants.

Civil Action No. 4:26-cv-01442-MWB

(Chief Judge Matthew W. Brann)

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Andrew R. Stanton (Pa. #93409)
Susan E. Kessler (Pa. #322558)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
skessler@jonesday.com

Anthony J. Dick (admitted *pro hac vice*)
Anthony J. Jeffries (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
ajdick@jonesday.com
ajjeffries@jonesday.com

*Counsel for Defendants David Kleppinger, Daniel Onorato, and Richard Sokolov*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE COURT LACKS JURISDICTION TO GRANT A PRELIMINARY INJUNCTION. ..... 2

  A. Plaintiffs' original willing speakers no longer qualify. ..... 2

  B. Plaintiffs' backup arguments fail. ..... 4

II. PLAINTIFFS CANNOT SUCCEED ON THE MERITS. ..... 7

  A. The First Amendment does not protect public servants' speech pursuant to their official duties. ..... 8

  B. The challenged Bylaws regulate only speech that enjoys no First Amendment protection. ..... 9

  C. Plaintiffs cannot show any unconstitutional applications of the Bylaws, let alone that unconstitutional applications substantially outweigh the constitutional ones. ..... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Freedom Forge Corp.*,
204 F.3d 475 (3d Cir. 2000) ....................6

*Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*,
39 F.4th 95 (3d Cir. 2022) ....................8, 9

*Ammond v. McGahn*,
532 F.2d 325 (3d Cir. 1976) ....................3, 5

*Antonyuk v. James*,
120 F.4th 941 (2d Cir. 2024) ....................8

*Ares Trading S.A. v. Dyax Corp.*,
114 F.4th 123 (3d Cir. 2024) ....................9

*Arizona v. United States*,
567 U.S. 387 (2012) ....................12

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ....................2

*Belitskus v. Pizzingrilli*,
343 F.3d 632 (3d Cir. 2003) ....................4

*Benner v. Oswald*,
592 F.2d 174 (3d Cir. 1979) ....................9

*Brandon v. Maricopa Cnty.*,
849 F.3d 837 (9th Cir. 2017) ....................14

*Bruni v. City of Pittsburgh*,
941 F.3d 73 (3d Cir. 2019) ....................10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................3

*De Ritis v. McGarrigle*,
861 F.3d 444 (3d Cir. 2017) ....................13, 14, 15

*Doe v. Burlew*,
165 F.4th 525 (6th Cir. 2026) ....................11

*Dougherty v. Sch. Dist. of Phila.*,
772 F.3d 979 (3d Cir. 2014) ....................8

*Fenchak v. Pa. State Univ.*,
2026 WL 2210062 (E.D. Pa. July 31, 2026) ....................9

*Foley v. Town of Randolph*,
598 F.3d 1 (1st Cir. 2010)....................14, 15

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)....................1, 8

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022)....................14

*Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach*,
506 F. Supp. 3d 229 (D. Del. 2020)....................5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................6

*Marcavage v. Nat'l Park Serv.*,
666 F.3d 856 (3d Cir. 2012) ....................4

*Mazon v. N.J. Sec'y of State*,
54 F.4th 124 (3d Cir. 2022) ....................12

*Milwaukee Deputy Sheriff's Ass'n v. Clarke*,
574 F.3d 370 (7th Cir. 2009) ....................11

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)....................7, 8, 10

*Pa. Fam. Inst. v. Black*,
489 F.3d 156 (3d Cir. 2007) ....................2, 6

*United States v. Cuevas-Almonte*,
156 F.4th 319 (3d Cir. 2025) ....................8, 15

*United States v. Hansen*,
599 U.S. 762 (2023)....................8, 9, 10, 11

*United States v. Yung*,
37 F.4th 70 (3d Cir. 2022) ....................................................................................10

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008)...............................................................................................12

**OTHER AUTHORITIES**

Minutes of Meeting, vol. 362 (Nov. 7, 2025), available at https://bpb-us-e2.wpmucdn.com/elements.psu.edu/dist/2/51/files/2026/02/BOT-Minutes-November-7-2025.pdf ........................................................................6

Minutes of Meeting, vol. 366 (July 17, 2026), available at https://bpb-us-e2.wpmucdn.com/elements.psu.edu/dist/2/51/files/2026/09/BOT-Public-Meeting-Minutes-July-17-2026-2 ........................................................6

## INTRODUCTION

This Court lacks subject matter jurisdiction to grant Plaintiffs' motion for a preliminary injunction (the "Motion") because Plaintiffs cannot identify a "willing speaker" whose speech is presently restricted by the new Bylaws. The speakers they originally identified—Alice Pope and Anthony Lubrano—no longer qualify because the revised Bylaws do not apply to emeriti trustees, like Dr. Pope, and Mr. Lubrano has left the Board. The Motion must be denied on that basis alone.

Even if the Court had jurisdiction, Plaintiffs cannot show a likelihood of success on the merits because binding Supreme Court precedent categorically bars their claims. This is a facial First Amendment challenge to the Bylaws, not an as-applied challenge. *See* Sept. 9, 2026 Hr'g. Tr. 54:6–8. That means Plaintiffs must show—***based only on the words of the Bylaws***—that unconstitutional applications of the Code of Conduct substantially outweigh its constitutional ones. They cannot show any unconstitutional applications. Facially, the challenged Code provisions apply only to speech that is made as part of an active, sitting trustee's official duties, and ***the First Amendment does not apply to "official duties" speech***—at all, under any circumstances, period, full-stop. *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). Plaintiffs try to avoid that inevitable conclusion by resorting to speculative as-applied hypotheticals and mischaracterizations of the Bylaws. Such sleight of hand is forbidden in a facial challenge. The case is that simple, and the Motion must fail.

## ARGUMENT

### I. The Court Lacks Jurisdiction to Grant a Preliminary Injunction.

Plaintiffs no longer have a cognizable Article III injury—thus their claims are moot, and the Court lacks subject matter jurisdiction to grant the Motion. "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (cleaned up).

Plaintiffs rely on an "entirely derivative" right-to-listen theory. *Pa. Fam. Inst. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007). To have a live case or controversy under that theory, they must "clearly establish the existence of a 'willing speaker'" whose speech is presently restricted by the Bylaws provisions they challenge. *Id.* Without a willing speaker, Plaintiffs can have no right-to-listen claim. They do not have one, and therefore the Motion must be denied.

#### A. Plaintiffs' original willing speakers no longer qualify.

The Motion identified Dr. Alice Pope and Mr. Anthony Lubrano as "willing speakers." This is insufficient to establish the Court's jurisdiction because the revised Bylaws do not apply to emeriti trustees like Dr. Pope, and Mr. Lubrano is no longer on the Board. ECF 24-4 (Bylaws Redline) § 2.03(a).

Plaintiffs claim Dr. Pope still qualifies because she "ha[s] considered" running to be a trustee again at some unspecified future time. ECF 30-2 ¶ 8. That is wrong. To be sure, the Bylaws' Elections Appendix allows the Board's Nominating Subcommittee to evaluate candidates' adherence to the Bylaws when deciding whether to place them on the ballot. ECF 30 (Reply) at 3–4. But if Dr. Pope were to run, that provision of the Elections Appendix would not apply to her because the challenged Bylaws provisions cannot apply to her—both because she is an emeritus trustee and because the Code of Conduct regulates speech only if made pursuant to official duties/in a trustee capacity, and only a sitting trustee can engage in such speech. In any event, Plaintiffs do not challenge the Bylaws' election procedures.

Dr. Pope's lack of any concrete intent to run takes her even further from the kind of "actual or imminent" injury that could justify injunctive relief. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The assertion that she has considered running is at best the kind of "allegation[] of *possible* future injury" that the Supreme Court has made clear does not qualify as a concrete stake in the dispute. *Id.*

And even putting aside those issues, Dr. Pope's hypothetical plans to maybe run, someday, could not support the extraordinary relief of a preliminary injunction because "it is not clear, and far from imminent" that she will decide to do so. *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976). Thus, there is no "imminent" "irreparable" harm that could justify a preliminary injunction. *Id.*

### B. Plaintiffs' backup arguments fail.

Because their only supported standing argument is moot, Plaintiffs try two backup arguments: (i) the voluntary-cessation doctrine; and (ii) unsubstantiated claims that current Trustee Jay Paterno is a "willing speaker" whose speech is being restricted. Neither works.

#### 1. Voluntary cessation does not apply.

The voluntary-cessation exception to mootness is a red herring. Plaintiffs have disclaimed the only relief it could provide, and it is inapplicable to boot.

Even if the voluntary-cessation exception applied to preserve Plaintiffs' original challenge to the pre-amendment version of the Code of Conduct, the only relief would be an injunction against reinstating that version or applying the new one to emeriti trustees. *See Belitskus v. Pizzingrilli*, 343 F.3d 632, 649–50 (3d Cir. 2003) (courts granting injunctions "should craft remedies no broader than necessary to provide full relief" for the relevant injury (quotation marks omitted)). But Plaintiffs concede that they do not seek an injunction barring enforcement of the old Code of Conduct against emeriti trustees. Tr. 15:23–25. Instead, they seek a sweeping injunction against application of the *new* Bylaws to *active* trustees. That requested relief has no connection to their voluntary-cessation theory. *See Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 861 (3d Cir. 2012).

In all events, voluntary cessation cannot justify the extraordinary relief of a preliminary injunction here. As the Third Circuit made clear in *Ammond v. McGahn*, when the only thing keeping a case from mootness is the voluntary-cessation exception, "there is no clear showing of immediate irreparable injury," and "a court should not exercise the delicate power of injunctive relief." 532 F.2d at 329 (3d Cir. 1976). Amending the Bylaws to re-impose restrictions on emeriti trustees would require referral to the Board's Governance Committee, Bylaws § 3.03(a), which must then recommend them to the full Board, followed by approval at a "regular or special meeting" of the Board that is attended by "at least a majority of the voting members." *Id.* §§ 2.09, 2.10, 9.01. Plaintiffs therefore cannot possibly claim an "immediate irreparable injury." *Ammond*, 532 F.2d at 329. On top of all that, Plaintiffs have offered no evidence to suggest that the Board will re-impose any restriction on emeritus trustees "before the Court can reach the merits of the case." *Knights of Columbus Star of Sea Council 7297 v. City of Rehoboth Beach*, 506 F. Supp. 3d 229, 233–34 (D. Del. 2020).

**2. Plaintiffs' new standing theory does not resuscitate their Motion.**

Plaintiffs argued in their reply brief and at the hearing that Jay Paterno is a separate willing speaker. Plaintiffs have utterly failed to carry their burden to "clearly establish" that Mr. Paterno is a "willing speaker" who "would speak more

freely if" the Bylaws provisions they challenge were enjoined. *Pa. Fam. Inst.*, 489 F.3d at 167 (quotation marks omitted).

To start, this argument is "insufficiently related to the complaint and" therefore "does not deserve the benefits of protective measures that a preliminary injunction affords." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 489–90 (3d Cir. 2000). Jay Paterno is never mentioned in the complaint. *See generally* ECF 1. Plaintiffs' belated discussion of him therefore does not even provide a basis for their case to stay in court, let alone for a preliminary injunction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (standing must be proved "with the manner and degree of evidence required at the successive stages of the litigation").

Plaintiffs did not mention Mr. Paterno in the complaint for good reason. There is zero evidence that Mr. Paterno has been silenced by the Bylaws. *Pa. Fam. Inst.*, 489 F.3d at 166. First of all, Mr. Paterno ***voted in favor*** of both the November 2025 and July 2026 Bylaw amendments; it is absurd to speculate that he wants to enjoin Bylaw provisions he approved.[1] Mr. Paterno also continues to speak freely, including voluntarily testifying against the University after the November 2025

[1] Minutes of Meeting, vol. 362 (Nov. 7, 2025), available at https://bpb-us-e2.wpmucdn.com/elements.psu.edu/dist/2/51/files/2026/02/BOT-Minutes-November-7-2025.pdf; Minutes of Meeting, vol. 366 (July 17, 2026), available at https://bpb-us-e2.wpmucdn.com/elements.psu.edu/dist/2/51/files/2026/09/BOT-Public-Meeting-Minutes-July-17-2026-2.pdf.

Bylaws amendments took effect. ECF 35 (Surreply) at 6–7. At the hearing, Plaintiffs claimed Dr. Pope's supplemental declaration supports the argument that his speech is restricted. Tr. 20:16–19. But she says only that *she* has spoken *to him* about *her* feeling constrained, not that *he* feels constrained. ECF 30-2 ¶ 12. Eventually, Plaintiffs gave the game away, arguing "Defendants miss the point of the Mr. Paterno evidence, which is ***imagine what he would be saying*** were it not for the Gag Policy." Tr. 16:16–18 (emphasis supplied). Needless to say, speculative imaginings do not establish that Mr. Paterno is the "willing speaker" Plaintiffs need to establish jurisdiction. Finally, Plaintiffs' other new arguments raised in their reply brief fail for the reasons Defendants' surreply states. Surreply at 5–6, 8–9.

## II. Plaintiffs Cannot Succeed on the Merits.

Even if this Court had jurisdiction, Plaintiffs' claims are categorically barred by binding Supreme Court precedent. And it is not a remotely close call.

Plaintiffs chose to bring a facial challenge to the Code of Conduct. Tr. 57:23. "[T]hat decision comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The Supreme Court has "made facial challenges hard to win" because they make courts rely on "speculation about the law's coverage and its future enforcement" to resolve constitutional issues. *Id.* (quotation marks omitted).

Two aspects of the facial-challenge standard are dispositive here. First, Plaintiffs' challenge must be "based on" the Code of Conduct's "text alone, without

consideration of the facts or circumstances of a particular case," *United States v. Cuevas-Almonte*, 156 F.4th 319, 328 (3d Cir. 2025), or reliance on "fanciful" hypotheticals. *United States v. Hansen*, 599 U.S. 762, 770 (2023). And they cannot "assume that" the Board "will act in bad faith" in implementing the Code. *Antonyuk v. James*, 120 F.4th 941, 987 (2d Cir. 2024). Second, Plaintiffs must show that any "unconstitutional applications" of the Code "substantially outweigh its constitutional ones." *Moody*, 603 U.S. at 724. That "rigorous standard," *id.* at 723, requires "a lopsided ratio" for a facial challenge to prevail. *Hansen*, 599 U.S. at 770. Plaintiffs cannot satisfy it because there are no unconstitutional applications—the Code regulates only speech that receives no First Amendment protection.

### A. The First Amendment does not protect public servants' speech pursuant to their official duties.

The facial analysis starts with articulating the governing legal standard. In *Garcetti v. Ceballos*, the Supreme Court held that when public servants "make statements pursuant to their official duties," "the Constitution does not insulate their communications from" control by the institution they serve. 547 U.S. 410, 421 (2006). In other words, "*Garcetti* establishes that when public employees speak 'pursuant to their official duties,' that speech does not receive First Amendment protection." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 987 (3d Cir. 2014). Thus, in a case like this, the Court must perform a "threshold" inquiry into whether the Bylaws—by their terms—regulate official duty speech. *Amalgamated Transit*

*Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022). If the answer is yes, the inquiry is over; the First Amendment does not apply. *Id.*

*Garcetti* squarely applies here, and therefore the First Amendment does not. At the hearing, Plaintiffs seemed to abandon their argument that the University's trustees fall within the supposed "elected public official" exception. That position was always meritless for the sound reasons articulated by the Eastern District of Pennsylvania in *Fenchak v. Pa. State Univ.*, 2026 WL 2210062, at *6 (E.D. Pa. July 31, 2026); *see also Benner v. Oswald*, 592 F.2d 174, 181–83 (3d Cir. 1979) (holding that "the duties of" Penn State "trustees are not commensurate with the duties of elected public officials," and finding that voting for a university trustee is not equivalent to voting in a "general government election[]").

At the hearing, Plaintiffs asked this Court to carve out a vague new exception to *Garcetti*, with no supporting precedent. Tr. 54:23–55:7. But this Court is "required to apply Supreme Court precedent faithfully," not make ad hoc exceptions to it. *Ares Trading S.A. v. Dyax Corp.*, 114 F.4th 123, 146 (3d Cir. 2024). Plaintiffs' argument for a new exception is thus "better addressed to . . . the Supreme Court." *Id.* This Court has no power to accept it. *Id.*

### B. The challenged Bylaws regulate <u>only</u> speech that enjoys no First Amendment protection.

To evaluate Plaintiffs' facial challenge to the Code of Conduct, the Court "must first determine what it covers." *Hansen*, 599 U.S. at 770. Here, the provisions

expressly track *Garcetti*, applying only when trustees are speaking "pursuant to their official responsibilities" or "in a Trustee capacity." Bylaws §§ 2.03(c), 2.04(c). They do not, as Plaintiffs claim, "restrict trustees from speaking for themselves on matters of public concern" or "proscrib[e] a vast swath of protected speech" or "allow Board leadership to block practically all Penn State-related speech ever made by a trustee." Reply at 10–11. They do only what they say.

This Court must resolve any doubts about the scope of these provisions in favor of their constitutionality. *See Hansen*, 599 U.S. at 781. "[I]t has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be readily susceptible to a narrowing construction that would make it constitutional, it will be upheld." *Bruni v. City of Pittsburgh*, 941 F.3d 73, 85 (3d Cir. 2019) (cleaned up). Because reading the Bylaws to apply only to unprotected official-duty speech is "textually plausible" (indeed textually unavoidable), the Court must do so. *United States v. Yung*, 37 F.4th 70, 79 (3d Cir. 2022).

### C. Plaintiffs cannot show any unconstitutional applications of the Bylaws, let alone that unconstitutional applications substantially outweigh the constitutional ones.

Given *Garcetti*'s clear rule and the Bylaws' plain text tracking it, Plaintiffs have failed to show that the Code's realistic "unconstitutional applications substantially outweigh its constitutional ones," *Moody*, 603 U.S. at 724, which would require Plaintiffs to show a "lopsided ratio" of unconstitutional applications.

*Hansen*, 599 U.S. at 770. By their terms, the Bylaws regulate only speech that gets no First Amendment protection under *Garcetti*.

Plaintiffs' arguments at the hearing, and many of the Court's questions to counsel, were grounded in hypotheticals speculating that the Bylaws will be misapplied, and questioning where "official duty" speech for trustees begins and ends. *See, e.g.*, Tr. 52:2–53:6, 71:21–23, 72:22–23, 76:14–19, 83:25–84:8. ***These as-applied hypotheticals are entirely irrelevant to deciding this facial challenge.***

For good reason. The exacting standard for a facial challenge matches the broad relief it affords. In contrast to an as-applied challenge, where relief is tailored to the specific violation, a successful facial challenge warrants an injunction barring *any* application of the challenged rule (as Plaintiffs seek here). *See Doe v. Burlew*, 165 F.4th 525, 530 (6th Cir. 2026). Such relief cannot be based on fanciful as-applied hypotheticals because its scope will not be limited to those hypotheticals.

In this facial challenge, the only question is whether the Bylaws—based on their "text alone"—restrict something more than "official duty" speech. They do not, and that is dispositive.

**1.** Tellingly, Plaintiffs have not cited a single decision involving a successful facial challenge to a speech restriction in a context where *Garcetti* clearly applied. *See Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 383 (7th Cir. 2009) (rejecting one such challenge). And their claim of uncertainty about the Code of

Conduct's scope illustrates a problem with their facial challenge, not a reason to accept it. *See, e.g.*, Tr. 51:24–52:8. Facial challenges are disfavored *because* they "often rest on speculation" and "raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (cleaned up). Any such uncertainty thus cuts against Plaintiffs' facial attack, not in favor of it. *See Arizona v. United States*, 567 U.S. 387, 415 (2012) (rejecting a facial challenge because there was "basic uncertainty about what the law means and how it will be enforced").

Plaintiffs' remaining arguments fare no better. They primarily contend that the Bylaws do not mean what they say, *see, e.g.*, Tr. 52:9–53:7 ("It simply can't be what the Gag Policy means"); ECF 30 at 11, and raise bizarre hypotheticals—like speculating about trustees being punished for discussing Saquon Barkley's NFL performances. Tr. 84:2–4. But a facial challenge must turn on the challenged provisions' "facial requirements," not speculation about "hypothetical or imaginary cases." *Mazon v. N.J. Sec'y of State*, 54 F.4th 124, 152 (3d Cir. 2022) (quotation marks omitted). The Bylaws regulate only "official duty" speech, which gets no First Amendment protection. Plaintiffs cannot justify a facial injunction by claiming that the Board will misapply the Bylaws by regulating *non*-official-duty speech. On their face, the Bylaws do not authorize that type of restriction.

**2.** At the hearing, the Court's questions reflected an interest in where the line between "official duty" and "private citizen" speech is drawn. Respectfully, this line of inquiry is not relevant because the Bylaws regulate only speech on the constitutionally permissible side of that line.

To be sure, the Bylaws do not delineate every type of official duty speech. This is an inherent feature of any *ex ante* rule—be it a statute, administrative regulation, or, here, set of Bylaws. Such rules require flexibility to address situations that have not happened yet. Here, the Bylaws track verbatim *Garcetti*'s standard, which is itself a flexible, general principle. Plaintiffs cannot seriously argue that the Supreme Court's own standard fails to pass constitutional muster—but to rule in their favor, that is what this Court would have to find.

As-applied challenges to specific disciplinary actions (which we don't have here) illustrate why the "official duty" standard is inherently flexible, requiring fact-bound and context-dependent analysis. For example, in *De Ritis v. McGarrigle*, an assistant public defender told judges and other attorneys while chatting before court that he had been demoted for taking too many cases to trial. 861 F.3d 444, 450 (3d Cir. 2017). The Third Circuit held that his attempted whistleblowing was "not protected by the First Amendment" because "the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee." *Id.* at 454. It then held that the *same statements* survived *Garcetti* when

made out of court. *Id.* Both the substance and context of speech inform whether it is official. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 530 (2022).

This is equally true in as-applied challenges involving statements to the press. In *Foley v. Town of Randolph*, for example, the First Circuit held that a fire chief had spoken "in his official capacity" when he criticized "what he considered to be inadequate funding and a related lack of staffing at the Randolph Fire Department," lamented voters' refusal to increase property taxes, and implored reporters "to bring this information to the public." 598 F.3d 1, 3, 7 (1st Cir. 2010). Foley "was not required to speak to the press as part of his job" and was making statements that the Town disagreed with, so it suspended him without pay. *Id.* at 4, 7. But because he made those statements at a press conference, "a forum to which he had access because of his position," and where he would be understood as speaking "in his official capacity," the "circumstances imbued his speech with the official significance that removed it from the protection of the First Amendment." *Id.* at 7, 10; *see also Brandon v. Maricopa Cnty.*, 849 F.3d 837, 840, 845 (9th Cir. 2017) (First Amendment did not protect county attorney's statement to a reporter suggesting "that she disagreed with the" county's settlement offers for a story about the county increasing offers "to avoid having key county officials testify").

These decisions illustrate that the facts and context drive the *Garcetti* inquiry as to whether a particular statement is made pursuant to the speaker's official duties.

*Foley*, 598 F.3d at 9. The fundamental problem for Plaintiffs is that this is a facial challenge, and there is no room to speculate about future facts and circumstances that may present the Board with difficult line-drawing problems. Speculating about imagined future enforcement actions has no place in this facial analysis.

**3.** Plaintiffs further argue that "Defendants have not demonstrated that *dissenting* speech falls ordinarily within the scope of trustees' 'official responsibilities.'" Reply at 9. Even in an as-applied challenge, *De Ritis* would destroy that argument. 861 F.3d at 450. But here it is just another attempt to smuggle in a hypothetical as-applied challenge where it doesn't belong. A facial challenge requires Plaintiffs to challenge the Code based on its "text alone, without consideration of the facts or circumstances of a particular case." *Cuevas-Almonte*, 156 F.4th at 328. The Code textually applies only to official duty speech.

That ends the facial-challenge inquiry. Plaintiffs have not identified and cannot identify a single unconstitutional application of the Code as written, because on its face the Code tracks *Garcetti* verbatim.

Dated: September 30, 2026

Respectfully submitted,

*/s/ Andrew R. Stanton*

Andrew R. Stanton (Pa. #93409)
Susan E. Kessler (Pa. #322558)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Tel: (412) 391-3939
Fax: (412) 394-7959
astanton@jonesday.com
skessler@jonesday.com

Anthony J. Dick
(admitted *pro hac vice*)
Anthony J. Jeffries
(admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
ajdick@jonesday.com
ajjeffries@jonesday.com

*Counsel for Defendants*
*David Kleppinger, Daniel Onorato, and*
*Richard Sokolov*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction is no more than 15 pages, in compliance with this Court's order.

Dated: September 30, 2026

*/s/ Andrew R. Stanton*

Andrew R. Stanton